[PHILADELPHIA, MARCH 31, 1831.]

## PIDCOCK for the use of CLOSSON *against* BYE.

### APPEAL.

An action of assumpsit may be maintained against the assignee of land, subject to the charge of a widow's thirds, to recover the principal of such charge, by those entitled to it after her death, without an express promise to pay it on the part of the assignee; but the judgment must be entered so as to make the land only liable, and not the defendant personally.

APPEAL from the Circuit Court of *Bucks* county.

This was an action of *assumpsit* brought by *Joseph Pidcock* for the use of *Isaac Closson* against *John Bye*, in which the plaintiff declared in effect:—That *Benjamin Pidcock* was seized in his demesne as of fee, of and in two messuages or tenements and tracts of land, containing one hundred and ninety-nine acres, situated in *Solebury* township in the county of *Bucks;* and being so seized, died intestate on the tenth of *July,* 1789 : That at an Orphan's Court, held, &c. on the sixth of *May,* 1800, *Sarah Pidcock,* the widow of the deceased, *Joseph Pidcock,* his eldest son, *William Boyd,* and *Elizabeth* his wife (she being a daughter of the deceased), *John Scholfield* who purchased the purpart of *Mary Lear,* formerly *Pidcock,* an other daughter, and *Watson Fell* guardian of *Sarah Ely,* only daughter of *Hannah Ely,* another daughter of the deceased who died intestate, being all the children and legal representatives of the deceased, presented their petition to the court, naming seven men, and praying the court to appoint the men so named, to make partition or valuation of the said premises, according to law: That the said court accordingly appointed them ; and that at an Orphan's Court held, &c. on the sixth of *August,* 1800, made return, finding that the premises could not be parted and divided, and valuing and appraising the same at and for the sum of nine hundred and eighty-two pounds one shilling and four pence, subject to the dower of the said *Sarah Pidcock,* widow of the intestate, which the inquest valued and estimated at nineteen pounds twelve shillings and nine pence three farthings, to be paid unto her annually during the term of her natural life: That the said valuation and return was on the day and year last aforesaid confirmed : That at an Orphan's Court held, &c. on the eighteenth of *September,* 1800, *Joseph Pidcock,* the eldest son, appeared and prayed that the said premises might be adjudged to him at the valuation, and entered into bonds with sureties to the other children and representatives for their distributive shares; whereupon the premises were adjudged to him, subject to the payment of the sum of three hundred and twenty-seven pounds seven shillings and one and a-half pence, unto the other children and

(Pidcock *v.* Bye.)

representatives, upon the death of the widow; two shares of which belonged to the said *Joseph Pidcock*, and the interest of the said sum to be paid to her annually, during the term of her natural life; all which by the record, &c. produced, &c. appears.

That the said *Joseph Pidcock*, having so accepted the said real estate and become seized thereof, on the third day of *March*, 1800, at, &c. and by articles of sale sold the same to a certain *Richard D. Courson*, for the price and sum of thirteen hundred and ten pounds, wherein it was covenanted between the vendor and vendee, among other things, that the sum of four hundred pounds, part of the purchase money, should remain a lien on the real estate sold during the lifetime of the widow *Pidcock*, the interest whereof was to be paid to her annually during her natural life; and at and upon her decease the principal of four hundred pounds to be paid to the said *Joseph Pidcock*, by the said *Richard D. Courson,* as by the same articles, sealed, &c. and &c. produced, appears.

That on the first of *April*, 1801, the said *Joseph Pidcock*, in pursuance of the said agreement, and at the request of the said *Richard D. Courson*, by his deed of indenture, granted, bargained, sold and conveyed the real estate aforesaid, unto the said *Richard D. Courson*, to hold to him, his heirs and assigns forever, for the aforesaid consideration of thirteen hundred and ten pounds, wherein and whereby it was covenanted and agreed that the said sum of four hundred pounds shall be and remain a lien upon the real estate conveyed during the lifetime of the said *Sarah Pidcock*, widow, &c., the interest thereof to be paid to her annually during her natural life, and at and upon her decease, the said principal sum of four hundred pounds, to be paid to the said *Joseph Pidcock* by the said *Richard D. Courson*, as by the same deed duly executed and acknowledged and recorded, and here into court produced, will fully appear. By force whereof the said *Richard D. Courson* then and there became seized of the real estate aforesaid, and entered thereinto, and thereby became chargeable and liable to pay unto the said *Sarah Pidcock* the interest of the said dower or thirds, during her natural life, and at her decease the principal of the said dower-money or thirds, unto the said *Joseph Pidcock*.

That the said *Richard D. Courson* being so seized and possessed thereof, charged with the payment of the dower or thirds aforesaid, as aforesaid, &c. of other real estate in the county aforesaid, on the —— day of A. D. 1815, died intestate, leaving issue *Richard D. Courson*, and *Hannah* the wife of *John Bye:* That on the twenty-eighth day of *August*, 1815, *Richard D. Courson*, his eldest son, and *John Bye* in right of *Hannah* his wife, only daughter of the deceased, presented their petition to the Orphan's Court of *Bucks* county, praying the court to award an inquisition to make partition of the real estate of the deceased, &c. which was awarded.

That on the twenty-ninth day of *August*, 1815, *Samuel Sellers*, Esq. high sheriff, &c. made return of an inquisition, whereby it was found that the said *Richard D. Courson* died seized of two certain messuages

(Pidcock *v.* Bye.)

and tracts of land, situated in *Solebury* township aforesaid,—the one containing one hundred and seventy-two acres and one hundred and nineteen perches, which they valued at fifty-eight dollars per acre ; the other, or second messuage, containing about two hundred acres which they valued at forty-eight dollars per acre, amounting to nine thousand six hundred dollars, which said last messuage and tract, they found was subject to the annual payment of fifty-two dollars and thirty-eight cents to *Sarah Pidcock,* widow, &c. of *Benjamin Pidcock* deceased, at whose death the principal of the said sum, amounting to eight hundred and seventy-three dollars will be due and payable, which inquisition was thereupon confirmed by the said court, as by the record, &c. produced, &c. appears.

That afterwards the said *Richard D. Courson,* and *John Bye* and *Hannah* his wife, in right of the said *Hannah,* concluded and agreed to make partition of the same between themselves, by deed of conveyance and release: That *Richard D. Courson* should have the first mentioned messuage and tract of one hundred and seventy-two acres and one hundred and nineteen perches of land, and that the said *John Bye,* in right of his wife *Hannah,* should have the second above mentioned messuage and tract of about two hundred acres of land, subject to the dower or thirds of the said widow *Pidcock,* the interest to be paid unto her annually, during her natural life, and, at her death, the principal sum of eight hundred and seventy-three dollars, to the said *Joseph Pidcock.* And that the said *Richard D. Courson* and *John Bye* and *Hannah* his wife, for the purpose of carrying the said agreement into effect, and making a final determination of the said estate, on the 5th of *March,* 1816, by their joint deeds, conveyed and released unto each other, the aforesaid two several messuages and tract of land and real estate. The said *John Bye* and *Hannah* his wife, conveyed and released to the said *Richard D. Courson,* the first above mentioned messuage and tract of one hundred and seventy two acres and one hundred and nineteen perches in fee, and the said *Richard D. Courson* and *Helen* his wife, conveyed and released unto the said *John Bye* and *Hannah* his wife, the second above mentioned messuage and tract of about two hundred acres of land, subject to the dower or thirds of the said widow *Pidcock,* the interest to be paid to her annually, during her natural life, and. at her death, the principal sum of eight hundred and seventy-three dollars, to the said *Joseph Pidcock* :To be held by the said *John Bye* and *Hannah* his wife for such estate, and under and subject to all, each and every such rents, payments and agreements, covenants, provisions, limitations, exceptions, restrictions, records, reversions and dower, as the said *Richard D. Courson* deceased, had held and stood seized of the same at and immediately before the time of his death ; as by the said deed of conveyance and release, duly executed and acknowledged and recorded, and here, &c. produced, will fully appear ; by force whereof the said *John Bye* then and there became seized of the real estate last aforesaid mentioned, entered thereinto, and thereby became chargeable

(Pidcock *v.* Bye.)

and liable to pay unto the said *Sarah Pidcock*, the interest of the said dower or thirds during her natural life, and at and upon her decease, the principal, *viz.* eight hundred and seventy-three dollars, unto the said *Joseph Pidcock.*

That *Sarah Pidcock* died on the 11th of *May*, 1818, of which the defendant then, &c. had notice, and that the said *John Bye*, in consideration of his promises aforesaid, and his assumption aforesaid, and being so indebted afterwards, *to wit*, the day and year last aforesaid, at the county aforesaid, and often afterwards, upon himself did assume, and unto the said *Joseph*, then and there faithfully promise that he, the said *John Bye*, the aforesaid eight hundred and seventy-three dollars, unto the said *Joseph*, when he thereto afterwards should be requested, would well and truly pay and content. Nevertheless, the said *John*, his promises, &c. not regarding, &c. did not pay the said sum of eight hundred and seventy-three dollars, &c. (except the sum of one hundred and nineteen dollars, part thereof, in the year 1820,) although requested, &c. on the 11th of *May*, 1818, and often afterwards, &c. to the damage of the plaintiff one thousand dollars, &c.

The *second* count was for eight hundred and seventy-three dollars, money had and received to the plaintiff's use.

The defendant pleaded *non assumpsit, non assumpsit infra sex annos, actio non accrevit infra sex annos.* The cause was tried on the 7th of *March*, 1831, before the Chief Justice at Doylestown.

The plaintiff, in opening, claimed two-sixths of the sum of eight hundred and seventy-three dollars, mentioned in the declaration, allowing a credit for one hundred and nineteen dollars, received by him on account, in 1820.

The plaintiff gave in evidence the records of the proceedings in the Orphan's Court, referred to in the declaration. He also gave in evidence the articles of agreement between *Joseph Pidcock* and *Richard D. Courson*, which were in these words:

" 3d of *March*, 1800. Conditions of public vendue, &c. Struck off " to *Richard D. Courson* for one thousand three hundred and seventy " pounds, to be paid as follows. On the 1st of *April*, 1800, deed and " possession to be given, when purchaser is to pay three hundred " pounds, and on that day come twelve months, three hundred pounds, " and all the interest due on the balance after the first payment is " made, at which time he may have a good title, on giving bond and " security for the remainder, which is to be paid in two equal pay- " ments, except four hundred pounds *to remain in the place on interest* " *during the lifetime of the said widow.*"

He further gave in evidence a deed bearing date the 1st of *April* 1801, from *Joseph Pidcock* to *Richard D. Courson*, conveying the premises subject to the payment of nineteen pounds twelve shillings and three pence annually, to *Sarah Pidcock* during life, to which was annexed a receipt for one thousand three hundred and ten pounds, the amount of the purchase money: A deed dated *March* 5th, 1816, by which *Richard D. Courson* and *Helen* his wife released to *John Bye*

(Pidcock *v.* Bye.)

and *Hannah* his wife, and the heirs and assigns of the said *Hannah*, all their interest, &c. in the tract of two hundred acrees ; reciting the proceedings in the Orphan's Court ; that the tract had been valued by the inquest, as subject to the yearly payment to the widow of *Benjamin Pidcock*, and to the payment of the principal sum, to his heirs, after her death, and to certain rents payable to the Loganian library; that the parties had subsequently made a partition among themselves, and granting the same, subject, &c. as the said *Richard D. Courson*, deceased, had and held the same, at and immediately before his decease ; and a release bearing the same date, from *John Bye* and *Hannah* his wife, to *Richard D. Courson*, of the other tract, reciting the inquisition and proceedings, &c. and that the parties had subsequently agreed to make partition, &c.

The death of the widow *Pidcock* was proved, and that her agent had regularly received from *John Bye* her dower, for several years, up to the time of her death. It was also proved by one witness, that *John Bye* had some years before made payments to *Closson* on account of the *Pidcock* dower, amounting to about one hundred dollars ; and by another witness, who was one of the arbitrators, by whom the cause had previously been heard, that *John Bye* had produced before them two receipts, signed by *Closson*, for payments amounting together to about one hundred and nineteen dollars. The witness did not know what they were exactly, but they were for a credit in this suit.

The plaintiff having closed his evidence, the defendant produced *Joseph Pidcock* as a witness, to prove that the matter had been settled with *Richard D. Courson*, deceased. Instead of this, he proved that *Richard D. Courson* had, during his lifetime, been desirous of paying off the widow's dower, or at least that part of it to which the witness was entitled after her death, but conceiving that it could not be done, the offer was declined, and *Courson* did not pay him his share, or any part of it. On being asked, on his cross-examination, whether *John Bye* had ever promised to pay it to him, he answered, that he had no concern with *John Bye*, and that after his mother's death, he had assigned his interest in writing. An assignment from *Joseph Pidcock* to *Isaac Closson*, dated the 1st of *July*, 1817, was then produced and read.

The defendant's counsel requested the court to charge the jury as follows :

*First.* It is the duty of the party alleging matter specially in his declaration, to prove substantially the matter laid in it, or he cannot recover.

*Second.* That if the jury [believe that any thing is due to *Joseph Pidcock*, or to *Isaac Closson* in his right, the action cannot be sustained as brought against *John Bye*, under the evidence in the cause, as he could only be liable in right of his wife, in respect of the land, and a verdict and judgment in this case would charge him personally and his estate.

(Pidcock *v.* Bye.)

*Third.* That if a personal action can be maintained, it is an action of covenant on the articles of agreement between *Richard D. Courson* and *Joseph Pidcock,* or an action of *assumpsit* against *Richard D. Courson's* personal representatives, for the remainder of the unpaid purchase money.

His Honor, after having stated the case to the jury, charged them to the following effect : That the dividends of the other children of *Benjamin Pidcock,* to which they were entitled after their mother's death, were charged on the land in the hands of their brother *Joseph,* and it might have been reached in an action against him on his bonds, but his own share was not charged, by virtue of the proceedings in the Orphan's Court, because the money being in his hands, would be paid to him at his mother's death, by operation of law : That when he sold the land, he might let a sum, to the amount of his own share, remain in the hands of the purchaser, and charge it on the land, in his own favor, as between him and the purchaser, and this, it appeared by the evidence, he had done ; and at his mother's death, he was entitled to come on the land in the hands of *Richard D. Courson,* or any one standing in his place, for his share of the principal of his mother's thirds ; it being so much of the principal withheld by *Courson,* to answer the annual interest payable to the widow : That he might also have maintained an action of covenant, to charge *Courson* personally, and whatever remedy he might have had, *Closson,* his assignee, was entitled to, in his name : That the interest to the widow had all been paid, as well as their shares of the principal to the other children, so that the question was, what was the proper remedy to recover the share of *Joseph :* That the plaintiff contended, that the defendant was personally liable, there being as it was said, evidence of an express promise, and to show this, the partial payments to *Closson* were relied on ; but his honor did not think this sufficient evidence of a promise to any one, and certainly not of a promise to *Joseph Pidcock,* as laid in the declaration : That the position contended for by the defendant, that the remedy was by action against the administrators of *Benjamin Pidcock* was untenable, the charge not having been created by him : That the remedy would clearly not be in a court of law, but a court of chancery, if we had one, to raise the money out of the land by a sale ; but having no court of chancery, we are compelled, sometimes, to prevent a failure of justice, to make a common law action perform the office of a bill in equity, and it seemed to his honor, an action in the present form would answer the intent as well as any other that could be devised, the jury taking care not to make the defendant personally liable, but liable only so far as was necessary to give the plaintiff judgment and execution against the land : That he was sensible this was a new case, and did not mean to commit his opinion conclusively on the subject, but only so far as was necessary to present the question for final adjudication by the Supreme Court.

Under this charge, the jury found a verdict in favor of the plaintiff

(Pidcock *v.* Bye.)

for four hundred and fifty-eight dollars and eighteen cents, due by the defendant, not personally, but in respect of the land.

A motion for a new trial, and in arrest of judgment having been overruled, the court ordered judgment *de terris* to be entered, from which the defendant appealed for the following reasons, *viz.*

Reasons for a new trial.

*First.* That the evidence did not support either count in the declaration.

*Second.* That under the evidence there could be no recovery against the defendant in an action of *assumpsit,* there being no proof of an express promise, and no evidence from which one could be implied.

*Third.* That the chief justice erred, in not affirming in his charge to the jury, the points propounded by the defendant's counsel.

*Fourth.* That there was error in charging the jury that an action of *assumpsit* would answer, to supply the place of a bill in equity, and that the jury ought to find a verdict against the defendant for what they believed to be due to the plaintiff; and to be recovered of the land only, and not to charge the defendant personally.

*Fifth.* That no such verdict could be rendered in an action of *assumpsit,* as that found by the jury ; and no judgment could be entered, or execution issued thereon.

*Sixth.* That the jury having, by their finding, negatived all idea of a promise, either express or implied, or any personal liability, the verdict should have been for the defendant.

*Seventh.* That the verdict is contrary to law.

Reasons in arrest of judgment.

*First.* That the facts set forth in the declaration, do not warrant a judgment against the defendant.

*Second.* That the verdict of the jury having expressly negatived all idea of a personal responsibility, no judgment can be entered on their finding.

*Third.* That no judgment can be rendered on the finding of the jury ; the finding not being such an one as is warranted in the action of *assumpsit.*

J. M. *Porter* for the appellant, argued, that the evidence did not support the declaration in several respects. The conditions of sale do not correspond with the manner in which they are set out. In the declaration it is averred, that the deed of the 1st of *April,* 1801, from *Joseph Pidcock* to *Richard D. Courson,* disposed of the principal of the dower, after the death of the widow, which was not the case. The land, too, is subject to a rent charge, created by the will of *James Logan,* and payable to the Loganian library, as to which the declaration is silent. Another discrepancy is, that in the declaration it is stated, that the deed from *Richard D. Courson* and wife to *John Bye* and wife, conveys the land subject to the dower, which is contradic-

(Pidcock *v.* Bye.)

ted by the deed itself. *Cooper* v. *Jordan,* 3 *Serg. & Rawle,* 577. 580, 581. *Philips* v. *Rose,* 8 *Johns. R.* 306. *Jones* v. *Moore,* 5 *Binn.* 573. 1 *Chitty Pl.* 302. *Lent* v. *Padelford,* 10 *Mass. R.* 230. *Anderson* v. *Hayes,* 2 *Yeates,* 95.

This was an action of *assumpsit,* and there was no proof of a promise, express or implied. *Joseph Pidcock* was called by us to prove that the whole matter was settled. He failed to do so; but he proved what was sufficient for our purpose, *viz.* that there was no promise on the part of *Bye* to pay the money. It is settled, that the land is the debtor, and not the person. The declaration avers that the defendant promised, and the verdict finds that he did not promise personally. How can such a verdict be supported upon such a declaration? An action to recover a legacy cannot be supported against a devisee and terre-tenant without an express promise. *Brown* v. *Furer,* 4 *Serg. & Rawle,* 213. *Gause* v. *Wiley,* 4 *Serg. & Rawle,* 509. *Nailer* v. *Stanley,* 10 *Serg. & Rawle,* 450. The effect of the finding in this case, is to bind the defendant personally. It can be in no other way in *assumpsit.* This would be highly unjust, for he is bound only in right of his wife, and if he were to die, his estate must be answerable for a debt not his own. The action would not lie against the defendant and his wife, because she was incapable of contracting, and *assumpsit* is always founded on contract. We did not come prepared to meet a proceeding *in rem,* of which the declaration gave us no notice, but a case of personal contract which the plaintiff declared upon, and which the jury have negatived. If the Loganian library should re-enter for non-payment of their ground rent, surely *Bye* would not be responsible for that; yet such would be the result if this verdict can be supported. *Bruch* v. *Porter,* 2 *Rawle,* 416. The court must adhere to established precedents, and Chief Justice Gibson said in *Barnet* v. *Ihrie,* 1 *Rawle,* 52, that it was decisive against the writ adopted in that case, that it was not to be found in the Register, and that the court did not possess the power to depart from established forms. Applying what is there said to the present case, the court has no right to adopt a remedy unknown to the law. The common law, it is true, is very elastic, and may be stretched as occasion requires, but not to its own destruction. To do what is now required will completely change the nature of the action of *assumpsit,* and call for an execution different from any heretofore known in such an action. A new execution must be framed, and that, this court has declared they have no right to do. The land, in this case, is the debtor, and no personal *assumpsit* by the possessor of it can be implied. An action of debt might perhaps have been sustained, but not of *assumpsit. Stat.* 22, *E.* 3. *Rol. Dig.* 158. *Howell* v. *Price,* 1 *P. Wms.* 294. *Evelyn* v. *Evelyn,* 2 *P. Wms.* 664.

In support of the reasons in arrest of judgment, all of which he considered together, Mr. *Porter* cited *Stephens on Pleading,* 117. *Beecher* v. *Beecher,* 7 *Johns. Rep.* 99.

(Pidcock *v.* Bye.)

*Kittera,* contra, said, that several remedies had already been resorted to in vain, and.if this did not succeed, the case presented an anomaly in the law; a clear right without a remedy. In the absence of a court of chancery, what common law remedy, or what mode of , pleading was better calculated to present the case fairly and fully, it is difficult to imagine. It is said, the action should have been debt. But that form would not have given the defendant more effectual notice of what he had to meet, than the form adopted. It is then a mere question of the form of the action, and has nothing to do with substance. The money sought to be recovered was part of the purchase money of the estate, and was not like a legacy charged upon land, where the purchaser takes the land subject to the charge. *Bye* is clearly bound to pay this money, and the time and manner of paying it was agreed by the parties. It remained in his hands until the time for paying over should arrive. It is, therefore, clearly a case of money had and received by the defendant to the use of those entitled to it, to be paid on the death of the widow. All the parties acquiesced, except *Joseph Bye,* who was represented by his assignee *Closson,* for whose use the action is brought, and who manifested his assent by the receipt of the interest and part of the principal. If there be error in the judgment, it is against the plaintiff, for it has been entered so as only to bind the land, when the defendant was personally bound also. The opposite argument has gone on the supposed analogy between this case and that of a legacy charged on land, which it does not resemble. But the principles of the cases referred to respecting legacies charged on land, support the present action. To recover a legacy, the suit must be against the devisee or terre-tenant, and the executor must be joined, or at least notice be given to him, in order that the creditors of the testator, through the executor, may have an opportunity of defending their interests, because no one can claim a legacy until the debts of the testator are paid. This is not the case of a terre-tenant, but of one, who, by his own agreement, takes the land subject to the charge, which he thus virtually promises to pay. It is equitable that he should pay it, and equity is the basis of the action of *assumpsit. Nailer* v. *Stanley,* 10 *Serg. & Rawle,* 450. *Assumpsit* will lie for a legacy charged upon land, 1 *Chitty Plead.* 90, and *a fortiori,* it will in a case like this. When a party takes land charged, it amounts to an express promise, *Van Orden* v. *Van Orden,* 10 *John.* 30. *Darnforth* v. *Schoharie & Duanesburg Turnpike Co.* 12 *Johns. R.* 227. *Goodwin* v. *Gilbert,* 9 *Mass. Rep.* 510. It was not necessary, that the promise should have been made to the plaintiff himself. If made to another for his benefit, it is enough. 1 *Bro. Ab.* 271.

The declaration is said to be erroneous in not setting forth correctly the instruments referred to. The rule is, that it is only necessary to state the legal effect, and courts always disapprove of stuffing declarations with unnecessary matter. One objection is, that the deed is set forth as if the money were payable on the death of the widow.

(Pidcock *v.* Bye.)

It was unnecessary to state the deed at all, but being introduced, it must be correctly stated, and it was so, because such was its legal effect.

The answer to the argument, that the court will be obliged to frame a new execution to suit this case, is, that they are obliged to do so constantly. It forms part of the chancery powers of the court, without which there would often be a failure of justice. If established forms can alone be resorted to, the business of the courts must stop. Where there is an established form suitable to the case, the court will adhere to it, but where no remedy can be found appropriate to the right, the court must devise one.

*Reply.*—The case in 10 *Johns. Rep.* 30, does not resemble this. There the person charged was the original devisee, who took the land subject to the burthen, and was bound to pay the money. There the defendant was merely tenant by the curtesy initiate of the land of his wife. The land was the debtor and not he. In the case cited from 12 *Johns. Rep.* 227, the point was not made, that the action should have been covenant. The only point decided was, that *assumpsit* will not lie against a corporation. The case cited from 9 *Mass. Rep.* 510, affords no inference in favour of this case. It was the case of a deed poll, and not an indenture. There was no mutuality, and *assumpsit* was the only remedy. Here there was a plain remedy by action of covenant against the executors of *Courson.* The cases cited in 1 *Chitty on Plead.* 90, are all cases of express promises to pay a legacy, and therefore do not apply. Equity is truly said in *Nailer* v. *Stanley* to be the basis of the action of *assumpsit;* but Judge DUNCAN, in that case, says, that *assumpsit* would charge the person, and not the land. This court has said, it is conclusive against a writ that it is not to be found in the Register. If this decision be not adhered to, great mischief will ensue from uncertainty, as to what the law is.

The opinion of the court was delivered by

HUSTON, J.—The pleadings and evidence presented the following case. Benjamin Pidcock died in 1789, seised of certain lands in *Solebury* township, *Bucks* county, and leaving several children, and a widow. In 1800, the children of *Benjamin Pidcock* proceeded according to law, to have the lands, late of *Benjamin Pidcock,* divided, among them or appraised. They were appraised, and one of the tracts valued at nine hundred and eighty-two pounds, one shilling and four pence, was taken at the appraisement by *Joseph Pidcock,* the oldest son, who gave bond and surties to pay the widow nineteen pounds twelve shillings and nine pence three farthings per annum during her life, and to pay the principal sum of three hundred and twenty-seven pounds seven shillings and one penny half penny to the heirs at her death. Sometime after this, (and the dates are very inaccurate in the paper book) *Joseph Pidcock* advertised the tract so taken by him, for sale at public vendue, among the conditions of which sale was one, that the land was to be taken subject to one

third of the valuation above-mentioned, and the interest to be paid to the widow during her life, and the principal to be paid at her death. The land was bought by *Richard D. Courson,* for one thousand three hundred and ten pounds, and the said *Richard D. Courson* signed the conditions of sale, and put his seal to them, agreeing that he was the purchaser, and engaging to comply with the terms. *Joseph Pidcock* executed a deed to *Courson.* This deed recited the death of *Benjamin Courson,* &c. &c. as fully as above stated, in every particular, and granted the lands, &c. &c. to have and to hold them subject to the said one third, specifying the sum, he to pay the interest to the widow during her life ; but this part did not state, that he was to pay the principal at her death. *Richard D. Courson* entered and held these lands till his death in 1815, during all which time he paid the widow the stipulated sum. *Richard D. Courson* left issue, *R. D. Courson* and *Hannah,* the wife of the defendant, and left the tract of land in question and another tract of land. On a petition to the Orphan's Court, the lands were valued by an inquest. In this stage of the matter, *Richard D. Courson* and *Bye* and wife agreed, that *Courson* should take one tract at the appraised price, and *Bye* and wife should take the one bought from *Pidcock.* The deed of partition, and release from *Richard D. Courson,* recited, that the tract had been valued by the inquest as subject to the yearly payment to the widow of *Benjamin Pidcock,* and the payment of the principal sum to the heirs of *Pidcock* after the death of the said widow. It also recited, that the said tract was subject to certain rents to the *Loganian* Library, and then it proceeded to convey all the right and interest of the said *Richard D. Courson* to the said *John Bye* and *Hannah* his wife, and the heirs of the said *Hannah,* to have and to hold the same subject to all the recited incumbrances, &c. &c. as *Richard D. Courson* held the same in his life-time ; and *John Bye* and wife released and conveyed the other tract to the said *Richard D. Courson.* The *narr.* stated all these proceedings in the Orphan's Court minutely, and the substance of the deeds and release to them as recorded; and then proceeded to state, that by virtue thereof the said *John Bye* became seized of the said tract of land, and entered into possession thereof, and thereby became chargeable and liable to pay the said annual rent or sum to *Sarah Pidcock,* the widow, *viz.* the sum of, &c. and on her death, the principal sum to, &c. &c. That the said *Sarah Pidcock,* the widow, died on 11th *May,* 1818, of which the said *John Bye* had notice, and in consideration of the premises, and of his assumptions and engagements aforesaid, afterwards faithfully promised to pay the said principal sum of eight hundred and seventy-three dollars to the said *Joseph Pidcock:* Nevertheless he hath not paid, except the sum of one hundred and nineteen dollars in the year 1820, but hath refused; and a count for money had and received.

At the trial objections were made to the whole action, and to the *narr.* or parts of it. A verdict was taken finding for the plain-

tiff four hundred and fifty-six dollars and eighteen cents, not against the defendant personally, but in respect of the land; and judgment *de terris,* and an appeal.

In this court, the defendant alleged, that the deeds were not set out fully enough; that the substance was not set out, or in other words, that when *Richard D. Courson* bought, and when partition was made between *Richard D. Courson* and *Bye* in each of which deeds, it was distinctly recited, that the land was granted subject to the payment of the interest to the widow, and of the principal at her death, there was no express engagement by the grantee to pay the one or the other. This was not much urged and could not be in a court, where the substance and real meaning of a deed is the criterion of its effect. In every one of the papers from the terms of sale, it was somewhere stated, that this tract was subject to this incumbrance, and well understood so to be by the defendant, and the engagement to pay it, or that whoever got the land must pay it, was more than implied. This incumbrance was part of the consideration given for it in all the transfers. This is not all; by express act of assembly the widow's thirds remained during her life charged on the land, and the interest thereof to be annually paid by the child taking the same, his heirs or *assigns* holding the same, to be recovered by the widow by distress or otherwise; and at the decease of the mother, the principal sum shall be paid by the child, who took the same at the valuation, or by his or her heirs or assigns holding the same premises, and shall be distributed, &c. That the money must be recovered then, was not denied, but it was said not in this form of action. No other was designated as better adapted, except that it was said, that formerly ejectment had been brought in such cases, and it was said, such an action did not lie in *England* or *New York,* except on an express promise.

It may be admitted, that no such action is to be found in any country, where they have a court of chancery. That is no reason why we should not sustain it; and 1 *Rawle,* 52, *Barnet* v. *Ihrie,* was cited to prove, that this court would not change the form of writs. I admit it, where a known action is used to obtain a long known remedy, but where we are obliged to use a known form of action to enforce what in other countries would be enforced in equity courts, we have adopted conditional verdicts in many cases, and if necessary in such cases, we may, and must mould our judgments and executions to suit the case. In some states chancery issues a *fi. fa.* why may not we give a special judgment to affect only certain lands, and issue a *fi. fa.* to levy on those lands alone; we do so on a mortgage, and on a judgment in debt on a recognizance against a conusor and terre-tenant. See 7 *Serg. & Rawle,* 1.

It was intimated, that although there might be a judgment *de terris* in *scire facias* or debt on a recognizance, yet this could not be in *assumpsit;* That it might be, perhaps, if this suit had been in debt, but not in the present form. There are many cases in which

(Easton Road Case.)

you may bring debt or *assumpsit*, and I take this to be one. I do not like the idea, that our equitable powers are more extensive in one form of action than in another. If it were so, however, it would be strange, if they did not exist in a form which has been emphatically called an equitable action, and did exist in actions which were originally, and yet in some countries are, more strictly legal.

The act of assembly and the agreements of the parties make this a charge on this land. The defendant knew of the charge, and took the land subject to it; it was in fact part of the price to be paid for it; there was in the whole transaction a consideration to the defendant, and express agreement to pay it to those entitled. Those entitled can by many authorities, support *assumpsit*, but the act of assembly fixes it on the land, and the agreement to pay was in consequence of his getting the land, and the suit is against him expressly as having entered on, and being seized of the land.

The same objections or stronger could have been made to any other form of action. It then comes to this, that the plaintiff has a right to this money, and the defendant is bound to pay it. In *England* the remedy would be in chancery; we have no chancery; can or cannot we give redress? The opinion of the court is, we can, and that in the present suit,

Judgment affirmed.