## Kitzmiller v. Cumberland Valley Savings and Loan Association

*John M. Eakin*, for plaintiff.
*John K. Currie*, for defendant.

SHEELY, *J.*, February 20, 1979—Plaintiff, L. Wayne Kitzmiller, commenced this equity action in an attempt to exclude two lots, which he purchased from a larger tract of land, from foreclosure pro-

ceedings by defendant, Cumberland Valley Savings and Loan Association.

## FINDINGS OF FACT

1. Plaintiff, L. Wayne Kitzmiller, is an adult individual who resides in Lemoyne, Cumberland County, Pa.

2. Defendant, Cumberland Valley Savings and Loan Association (CVSL), is a savings and loan association organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Carlisle, Cumberland County, Pa.

3. A.F.C. Cumberland Valley, Inc. (AFC), a Pennsylvania corporation, took title to a tract of land of 60.335 acres, situate in Lower Allen Township, Cumberland County, Pa., by deed dated May 9, 1973, and recorded in Deed Book "D," Volume 25, at page 654.

4. On December 19, 1973, AFC recorded a Plan of Lots in Plan Book 24, pages 102-103, which laid out the 60.335 acre tract into a real estate development called The Cliffs containing 39 lots numbered 1-39.

5. Defendant CVSL placed a mortgage on said land, excluding lot no. 38, dated August 19, 1975, in the amount of $652,000 and recorded in Mortgage Book 593 at page 611.

6. From the date of the mortgage on August 19, 1975, until May 11, 1977, defendant released the lien of its mortgage for 60 percent of the purchase price on seven lots and 12 percent of the purchase price on one lot.

7. Plaintiff is a contractor who installed curbs in the streets of said development and when AFC failed to pay him, he brought an action in assumpsit

(No. 4381 Civil 1977) against AFC and on January 3, 1978, entered judgment thereon in the amount of $17,893.

8. Plaintiff issued execution on his judgment against AFC and caused lots nos. 12, 32 and 37 to be sold at sheriff's sale on June 15, 1978.

9. At the aforesaid sheriff's sale, lot no. 32 was purchased by William B. Iams et ux. for $9,000 and lots nos. 12 and 37 were purchased by plaintiff for one dollar.

10. The three lots were conveyed to the respective purchasers by the sheriff, subject to the mortgage in favor of defendant.

11. William B. Iams paid defendant CVSL $24,375 to release the lien of its mortgage on lot no. 32.

12. Plaintiff requested defendant CVSL to release the lien of its mortgage on lot no. 12 for $21,000.

13. Defendant refused to release the lien of its mortgage on lots 12 and 37 unless it was paid 75 percent of the purchase price or $25,000 whichever was greater.

14. AFC defaulted on its mortgage with CVSL and on May 31, 1978, CVSL obtained a judgment in the amount of $543,600.99 against AFC in a mortgage foreclosure proceeding (No. 1008 Civil 1978).

15. CVSL issued execution on its judgment by listing the remaining unreleased lots (27 owned by AFC and 2 owned by plaintiff) for sale at sheriff's sale set for September 13, 1978.

16. Plaintiff thereupon filed the subject equity action to enjoin the sheriff's sale of lots nos. 12 and 37 until the 27 lots of AFC were first sold and the purchase price applied to the mortgage.

17. By order of court dated September 11, 1978,

the injunctive relief requested by plaintiff was refused. The sheriff was thereby directed to sell the property of AFC, first without lots 12 and 37, "and if the tract for sale without these lots can be sold to a buyer for a sufficient price to provide for the principal balance of said mortgage, interest, costs of sale and attorney's commission, to Cumberland Valley Savings and Loan Association, then Lots 12 and 37 will not be sold at the sale." If not, the court directed that the entire tract be sold, including lots 12 and 37.

18. At the sheriff's sale of September 13, 1978, AFC's 27 lots were offered for sale and defendant, being the only bidder, bid one dollar.

19. Subsequently, pursuant to the aforementioned order of court, the 29 lots were offered for sale and defendant, being the only bidder, bid one dollar.

20. CVSL thereupon purchased all 29 of the unreleased lots covered by the lien of the mortgage including lots 12 and 37.

21. On October 3, 1978, plaintiff filed a petition requesting that the sheriff be enjoined from executing and delivering the deeds to lots 12 and 37 to CVSL until the market value of the 27 other lots was determined in conformity with the Deficiency Judgment Act, 42 Pa.C.S.A. §8104. Further, plaintiff requested an evidentiary hearing on the net fair market value of the 27 and 29 lot tracts to determine whether 27 lots will fully satisfy defendant's mortgage.

22. By order of court dated October 3, 1978, the court set a hearing for October 17, 1978, and directed that the sheriff not deliver the deeds to lots nos. 12 and 37 to defendant until further order of court.

## ISSUES

1. Does the marshaling of assets doctrine apply in the case at bar?

2. Does the doctrine of the inverse order of alienation apply in the case at bar?

3. Does the Deficiency Judgment Act apply in the case at bar?

## DISCUSSION

Plaintiff Kitzmiller urges this court to apply either the equitable marshaling of assets doctrine or the equitable inverse order of alienation doctrine. For the reasons stated below neither is applicable in the case before us.

The doctrine of marshaling assets, also known as the two-funds rule, can be stated thus:

"Where two or more creditors seek satisfaction out of the assets of their debtor, and one of them can resort to two funds whereas another creditor has recourse to only one of the funds—for example, where a senior or prior mortgage has a lien on two parcels of land, and a junior mortgage has a lien on but one of the parcels—the former may be required to seek satisfaction out of the fund which the latter creditor cannot touch, so that by this means of distribution both creditors may be paid, or the single-fund creditor may, if possible, have his claim satisfied out of the fund which is subject to the claims of both creditors." 53 Am. Jur. 2d, Marshaling Asset §1 (1970). See Penn Central Transportation Co. v. New York State Urban Development Corp., 346 F. Supp. 1323, motion denied 346 F. Supp. 1333 (E.D. Pa. 1972), vacated 468 F. 2d 1222 (3d Cir. 1972); American National Ins. Co. v. Vine-Wood Realty Co., 414 Pa. 263, 199 A. 2d 449 (1964).

It can be summarily noted that this doctrine is inapplicable to this case. CVSL has a lien on only one "fund." For this reason, we need not decide whether plaintiff is a second creditor.

Plaintiff also contends that the equitable doctrine of inverse order of alienation should be applied by this court. That doctrine "compels a mortgagee, when the land subject to the mortgage has been aliened or encumbered in separate parcels, to satisfy his lien out of the land remaining in the original owner, and only if that should be insufficient to satisfy the mortgage may he resort to the parcels sold, and such parcels must be resorted to in the inverse order of their alienation." Mayo v. Cement National Bank, 36 Lehigh 299, 306 (1975). See Cowden's Estate, 1 Pa. 267 (1845); Nailer v. Stanley, 10 S. & R. 450 (1823). See generally, 131 A.L.R. 4.

This doctrine is based on the intention of the parties (either express or implied) that, in the absence of a contract to the contrary, one's property may not be used to pay another's debts. Further, intention is presumed that one who conveys, for value, a part of his property to another, when it is covered by a paramount lien, will charge the part conveyed with the payment of his indebtedness only if agreed or necessarily inferred. See 53 Am. Jur. 2d, Marshaling Assets, §§4, 44, 71 (1970). Such an intention, however, is not present when the property is sold involuntarily, i.e., by judicial or sheriff's sale, and, in such a situation, despite conflict on the issue: see 53 Am. Jur. 2d, Marshaling Assets §71 (1970); 131 A.L.R. 4 at 85; the equitable principle that "equality is equity" is applied by Pennsylvania courts: Carpenter v. Koons, 20 Pa. 222 (1852); Home Unity Savings & Loan Ass'n v. Balmos, 192 Pa. Superior

Ct. 542, 162 A. 2d 244 (1960); Delaware County Trust Co. v. Lukens, 38 Pa. Superior Ct. 509 (1909).

In Carpenter v. Koons, supra, the dispute was between a purchaser at an 1844 sheriff's sale and a purchaser at an 1846 sheriff's sale. The court stated:

"A man who purchases part of a tract covered by a mortgage, buying the title out and out, clear of encumbrances, and paying a full price for it, has a plain right to insist that his vendor shall allow the remainder of the mortgaged premises to be taken in satisfaction of the mortgage debt before the part sold is resorted to. This being the right of the vendee against the mortgagor himself, the latter cannot put the former in a worse condition by selling the remainder of the land to another person. The second purchaser sits in the seat of his grantor, and must pay the whole value of what he bought towards the extinguishment of the mortgage, before he can call on the first purchaser to pay anything. The first sale having thrown the whole burden on the part reserved, it cannot be thrown back again by the second sale. In other words the second purchaser takes the land he buys subject to all the liabilities under which the grantor held it.

"But if the rule is to cease when the reason of it ceases, it cannot extend to a case where the first sale was made subject to a mortgage; and that is the condition of the present one. The defendant's deed is older than his adversary's, but it conveys him nothing but the equity of redemption. The act of 1830 provides that if the oldest lien be a mortgage, and the land be sold on a judgment, the sheriff's vendee shall take it subject to the mortgage. When the defendant made his purchase

therefore, *he had manifestly no claim either on the mortgagor or on anybody else to pay off the whole mortgage and relieve him entirely from what was probably the most burdensome part of his contract. His share of the mortgage formed a part of the price he agreed to pay for the land. . . .*

"There is a wide and palpable difference between one who buys land subject to a mortgage, and has a reduction in the price equal to the amount of the lien, and another who pays its full value and stipulates for a title clear of encumbrances. Such a distinction is anything in the world but a 'theoretical subtlety.'

". . . Two purchasers at a sheriff's sale, subject to a mortgage which is a common encumbrance on the land of both, stand on a level. Neither of them has done or suffered anything which entitled him to a preference over the other. Equality is equity. They must pay the mortgage in proportion to the value of their respective lots.

"The value of the lots is to be ascertained and determined by the jury on all the legal evidence which the parties see fit to produce. We do not think the biddings at the sheriff's sale amount to more than a circumstance from which the jury might make their own inferences." Accordingly, the doctrine of inverse alienation was held inapplicable.

The rule stated in Carpenter v. Koons, supra, is still valid law today. See Home Unity Savings & Loan Ass'n v. Balmos, supra; Delaware County Trust Co. v. Lukens, supra. While the factual setting in Carpenter is not identical to that of the case presently before us, we, nevertheless, feel the principle applies herein and so hold.

To effectively implement the "equality is equity"

rule and to determine the pro rata share of the mortgage balance that plaintiff's two lots must bear, it is necessary for this court to fix the fair market value of each of the 29 lots in question. Although there has been a previous hearing where testimony as to value was presented, we believe each party should be afforded the opportunity to present additional evidence in light of this opinion should they so desire, on the value of the lots.

Plaintiff has also alleged that the Deficiency Judgment Act, 42 Pa.C.S.A. §8104, should be applied in the case at bar. Plaintiff's contention is incorrect. The Deficiency Judgment Act applies only where the judgment creditor/mortgagee sells real property in an execution proceeding and then wishes to collect the balance due out of other assets of the debtor. In the case at bar, plaintiff seeks to require defendant to sell *only part* of the real property upon which he is entitled to execute, with leave to use the Deficiency Judgment Act to seek the balance, if necessary. We do not feel this is a proper situation in which to apply the act.

## ORDER

And now, February 20, 1979, for the reasons stated above, it is ordered and directed that a hearing be set for Friday, March 9, 1979, at 9:30 a.m., in Court Room No. 2, at which time plaintiff and defendant will be given an opportunity to present to the court any additional evidence they wish on the issue of the fair market value of each of the 29 lots in question. Further, the sheriff is directed to deliver to defendant the deeds to the 27 lots not in dispute if he has not already done so, upon payment of appropriate costs.