**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 5, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

MARIO RAYMOND SANCHEZ,

  Defendant - Appellant.

No. 21-1328
(D.C. No. 1:20-CR-00039-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Defendant-Appellant Mario Sanchez was convicted of being a felon in possession of a firearm and ammunition in a bench trial and sentenced to 37 months' imprisonment to be followed by three years' supervised release.  18 U.S.C. § 922(g)(1).  He appeals the denial of his motion to suppress evidence.  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**Background**

The parties are familiar with the underlying facts and so we recount them herein only as necessary to our disposition.

Mr. Sanchez was a person of interest in a homicide investigation. On January 23, 2020, law enforcement officers located Mr. Sanchez at the home of his mother, Serapia Gutierrez. Ms. Gutierrez was present with her grandson, Mario Jr., and his dog. She welcomed the officers, encouraging them to "search anything on the property that [they] wanted," including cars and a detached garage. 3 R. 183. The officers declined to search the home at that time, instead opting to wait for a warrant. Warrant application pending, the officers secured the home and informed Ms. Gutierrez that they "may or may not be securing a [warrant]," which could take a while. Id. 223. As a security measure and to prevent destruction of evidence, the officers indicated anyone walking around in the home would be followed. While Ms. Gutierrez and Mario Jr. were present, Mr. Sanchez was handcuffed and removed. Ms. Gutierrez then left the house to be interviewed by law enforcement. Only the officers remained.

Approximately two hours later, Mr. Sanchez's ex-wife Victoria Mandujano (Mario Jr.'s mother) arrived to retrieve the dog from the bathroom, where it had been secured while the officers performed a "cursory sweep of the house." Id. 156, 181–82. Ms. Mandujano looked around the home for a leash. One of the officers, Deputy Sean Allegar, followed her as she did so. Ms. Mandujano opened a dresser drawer in Mario Jr.'s bedroom (where Mr. Sanchez had slept the previous night) in which there was a gun.

2

Both she and the officer saw it.  This observation was included in the application for a search warrant.  The officers remained in the home for about two to three hours before the warrant arrived.  "The officers then executed the search warrant [and] recovered the gun, which turned out to be a nine-millimeter handgun."  Id. 331.  "Mr. Sanchez's DNA was found on the gun, and . . . . [t]he bullet from the apartment that was found near the [victim's] body matched th[e] gun."  Id.  Mr. Sanchez admitted to possessing the gun.

Mr. Sanchez moved to suppress the firearm as derivative evidence on the basis that the warrant lacked probable cause and the house was improperly impounded during the application for the warrant.  Mr. Sanchez contended that there was no nexus between the suspected criminality and the home.  After an evidentiary hearing, the district court denied the motion.  The court determined that the search warrant was based on probable cause, even excluding the gun, concluding the officers had reason to believe that Mr. Sanchez would be in the home along with a "very portable device" like the handgun at bar.  3 R. 265–66, 322, 333.  The court then ruled that the gun was found, not because of a consent search or any search for that matter, but because the deputy "properly" followed Ms. Mandujano into the bedroom and observed the gun "by chance" and "in plain view."  Id. 333.

## Discussion

Our review of a denial of a motion to suppress proceeds with a view of the evidence in the light most favorable to the government, and the district court's factual

3

findings will be upheld unless clearly erroneous. United States v. Romero, 749 F.3d 900, 903–04 (10th Cir. 2014). We review the district court's legal conclusions regarding Fourth Amendment reasonableness de novo. United States v. Johnson, 43 F.4th 1100, 1107 (10th Cir. 2022).

Mr. Sanchez argues that the initial impoundment of the home violated the Fourth Amendment because it was not supported by probable cause at its inception. Aplt. Br. 32. While ordinarily a seizure "require[s] probable cause (as well as a warrant or exigent circumstances)," Manzanares v. Higdon, 575 F.3d 1135, 1147 (10th Cir. 2009), none was required in this case because Ms. Gutierrez's unbounded permission overrode any such requirement. See Soza v. Demsich, 13 F.4th 1094, 1105 (10th Cir. 2021). Here, Ms. Gutierrez volunteered her home unprompted, including her vehicles and garage for the officers to view. She repeatedly advised that she had "nothing to hide." 3 R. 224, 328. Her testimony supports the district court's view of the evidence that Ms. Gutierrez patently indicated she would cooperate. Id. 52–53. Given this manifest consent, it is immaterial whether the officers' conduct constituted a search or seizure.

To the extent Mr. Sanchez argues that Ms. Gutierrez's consent was somehow limited or invalidated, this is legally and factually incorrect. See Aplt. Reply Br. 2–5. As discussed, when the officers arrived, Ms. Gutierrez gave the officers permission, then sometime later she was voluntarily transported to the police station to be interviewed. 3

R. 46–47, 186–87.[1]  There is nothing in the record to suggest that during that time, she withdrew her permission or was unaware that the officers would remain in the home.  See United States v. Ortiz, 669 F.3d 439, 445 (4th Cir. 2012) ("[A]ny consent given is valid until it is withdrawn by the defendant.").  Thus, the consent remained valid throughout the duration of the officers' presence in the home.

The gun was observed in plain view when Deputy Allegar appropriately followed Ms. Mandujano into the back room.  The parties don't dispute that the gun was visible to Ms. Mandujano and Deputy Allegar when Ms. Mandujano opened the dresser drawer.  As Deputy Allegar was lawfully present from that vantage point, the plain-view exception to the warrant requirement applies.  Johnson, 43 F.4th at 1110.  In sum, the district court did not err in concluding that the officers had consent to be in the home and that Deputy Allegar lawfully followed Ms. Mandujano into the bedroom where the gun was observed in plain view.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[1] Although her memory was admittedly fuzzy, Ms. Gutierrez recalled being transported in a non-law enforcement vehicle, while Deputy Travis Wilson (also present on scene) remembered escorting Ms. Gutierrez, who drove her own vehicle.  In either event, Ms. Gutierrez was asked and agreed to be interviewed.  3 R. 185–86.