[PHILADELPHIA, JANUARY 9, 1832.]

## Case of SAMUEL WALKER'S Estate.

### APPEAL.

Testator devised to his wife certain real estate, and "*also, all his household goods and fur-niture, moneys, bonds, mortgages, outstanding debts due and owing to him, and all other his personal estate of what nature or kind soever.*" He devised to trustees, for the use of his son, certain other real estate, and to the same trustees, for the separate use of his daughter, certain other real estate, declaring in his will that the husband of his daughter, should not, in any event, nor by reason of any cause, ways or means whatsoever, have any right, claim or interest in his estate, in right of his wife or otherwise, nor receive any benefit or advantage therefrom. These devises and bequests disposed of the whole of the estate the testator then possessed. After the execution of his will, he acquired other real estate, and died indebted to various persons, without having republished his will, or made any codicil disposing of the real estate made after its execution. *Held,* that the bequest of the testator's personal estate to his wife, was not specific, and that there was nothing in the will which showed an intention to exempt it from the payment of his debts, and that consequently, it was to be applied to that purpose before the real estate acquired after the execution of the will, could be resorted to.

ON an appeal by the executors of *Samuel Walker,* deceased, from the decree of the Orphan's Court for the city and county of *Philadelphia,* it appeared that the said executors, *Elizabeth Y. Walker, Joshua Canby* and *Thomas Betts,* on the 17th of *February,* 1826, presented a petition to the Orphan's Court, setting forth that they had made a final settlement of their administration account, which had been confirmed by the court, and exhibited a balance of three thousand and thirty-one dollars and forty-five cents, due from the estate, for the payment of which there were not sufficient assets, and praying the court to grant an order for the sale of the real estate of the decedent, for the payment of his debts. The court thereupon appointed an auditor " to examine and report upon the necessity and propriety of the sale prayed for, as well with regard to the particular estates required to be sold, as the state of the personal estate of the deceased."

From the report of the auditor, which was made on the 2nd of *May,* 1826, it appeared, that *Samuel Walker,* on the 1st of *March,*

1820, made his will, by which he devised and bequeathed to his wife *Elizabeth Y. Walker*, a certain portion of his real estate, and also " *all his household goods and furniture, moneys, bonds, mortgages, outstanding debts due and owing to him, and all his other personal estate, of what nature or kind soever, to hold to her, his said wife Elizabeth Y. Walker, her heirs and assigns foerver.*"

He also devised to *Thomas Betts* and *Joshua Canby*, and the survivor of them, in fee, another portion of his real estate, of considerable magnitude, *in trust*, for the use of his son *Samuel Jones Walker*, the rents and profits thereof to be received by the trustees, and paid into the hands of his wife *Elizabeth Y. Walker*, as the guardian of his said son, to whose education, maintenance and support, they were to be applied during his minority. After his said son had attained the age of twenty-one years, the said estate was to be held by the trustees, in trust for the use of the said *Samuel Jones Walker*, and for such other use and uses as he, by any deed, or by his last will and testament, or any writing under his hand and seal, executed in the presence of two or more credible witnesses, should limit and appoint, and for want of such limitation or appointment, then, after the decease of the said *Samuel Jones Walker*, in trust for the use of his child or children, who should be then living, and the issue of such as might be dead, in fee, as tenants in common; and for want of such child or children, or their issue, then, *in trust*, after the decease of the said *Samuel Jones Walker*, for the sole and separate use and benefit of the testator's daughter *Ann D. Harper*, during her life, so as not to be subject to the control of her husband, or liable for his debts; and after her decease, for the use of such child or children, and in such shares and proportions, as she by any writing in the nature of a will or appointment, executed under her hand and seal, in the presence of two or more credible witnesses should direct and appoint, and for want of such direction and appointment, in trust for the use of all and every, the child or children of his said daughter, who should be then living, and the issue of such as might be dead, as tenants in common, in fee, and for want of such child or children, or their issue, then, after the decease of his daughter, in trust for the use of the right heirs of the testator forever.

To the same trustees the testator devised another portion of his real estate, *in trust*, for the sole and separate use of his said daughter *Ann D. Harper*, upon the same trusts as those conditionally declared in her favour in reference to the estate devised to his son, and in the event of the death of his daughter, without leaving a child or children, or their issue, he gave the estate devised to his daughter, to his said son *Samuel Jones Walker*, in fee, and in case of the death of his said son without leaving a child or children, or their issue, to his own right heirs forever.

The residue of his estate, the testator gave to his said son *Samuel Jones Walker*, in fee.

In the last clause of his will, he declared, that he wished it to be

(Case of Walker's Estate.)

understood as his will and intention, that the husband of his said daughter should not in " any event nor by reason of any cause, ways, or means whatsoever, have any right, claim, or interest in his estate, in right of his wife or otherwise, nor receive any benefit or advantage therefrom."

After the execution of his will, *Samuel Walker* acquired other real estate, and died on the 1st *December*, 1824, without having republished his said will, or added any codicil disposing of the real estate acquired subsequently to its execution. He died indebted to various persons.

On the 7th *December*, 1824, an appraisement was made of the household furniture, and moveables of the testator, which with money on hand and in bank, at his decease, amounted to two thousand one hundred and forty-three dollars and seventy-six cents. Between the 10th *December*, 1824, and the 17th *October*, 1825, several sums amounting together to seven hundred and seven dollars and seventy-three cents, were received by the executrix, *Elizabeth Y. Walker*, making the whole amount of the personal estate received by her, of which any account was given, two thousand eight hundred and fifty-one dollars and forty-nine cents; but no account was given by her of the amount received in bonds, mortgages and outstanding debts due to the testator; on the contrary, she set up a claim in her administration account to retain the whole personal estate of the testator, founding such claim upon the bequest of the same to her in his will.

On the 11th *November*, 1825, *Thomas Betts* and *Joshua Canby* settled an administration account in the Register's office, stating that no assets of the deceased had come into their hands, and claiming the sum of one hundred and fifty-nine dollars and fifty cents for their services and disbursements, and on the 18th *November*, 1825, *Elizabeth Y. Walker*, settled her separate administration account in the Register's office, claiming a balance of one thousand one hundred and forty-one dollars and sixty cents in her favour, and referring to a supplemental account, to be filed by her.

The auditor deemed it unnecessary to inquire into the propriety and legality of the several payments, for which credit was claimed by the said *Elizabeth Y. Walker*, in her administration account, as a proper decision of the matters submitted to him, depended on the question, whether, under all the facts of the case, the personal estate of the testator, as between the parties interested, was to be applied to the payment of his debts, before the lands acquired by him after the date of his will, were resorted to, it being his opinion, that the estates devised, were exempt, inasmuch as every devise of lands, is necessarily a specific devise. *Elizabeth Y. Walker* claimed all the personal estate of the testator, insisting that it was exempted from the payment of his debts, because it was specifically bequeathed to her, and that the debts due by the testator were to be paid out of the real estate acquired by him, subsequently to the execution of his will, and which descended to his heirs at law. But the auditor was of

opinion, that the bequest to her was not a specific legacy, but a general bequest, and there being no express direction or plain implication in the will, exempting the personal estate from the payment of the testator's debts, as between his legatees, devisees and heirs at law, the personal estate was the proper fund for that purpose, and ought to be first applied to it. He therefore reported, " that there was no necessity for or propriety in directing a sale of the real estate, prayed by the said executors of the said *Samuel Walker*, or any part thereof."

The following exceptions to the report of the auditor were filed in the Orphan's Court, viz :—

*First.* The auditor erred in the opinion, that the real estate of the testator, acquired subsequently to the date of the will, (and for the sale of which the above application was made) is exempt from responsibility for the testator's debts until the personal estate shall have been first applied for that purpose.

*Second.* The auditor erred in the opinion, that the bequest to *Elizabeth Y. Walker*, wife of the testator, of the whole of the testator's personal estate, as set forth particularly in the will, is not a specific legacy but a general bequest, and that the personal estate is nevertheless liable and the proper fund to be applied for the purpose of paying the debts due from the testator.

*Third.* The auditor erred in the opinion, that there was no plain implication, by the said testator in his will, exempting his personal estate from the payment of debts, such intention being plainly manifested by a liberal construction of the will in question.

*Fourth.* The auditor erred in matters of law and fact in his said report.

After argument, the Orphan's Court confirmed the report of the auditor, and dismissed the petition for the sale of the real estate ; whereupon an appeal was entered by *Elizabeth Y. Walker* to the Supreme Court.

*D. P. Brown* and *Rawle* for the appellant.—The case resolves itself into an inquiry whether the personal estate of the testator bequeathed to his widow, or the real estate which he acquired after the execution of his will, is to bear the burthen of his debts. The clause in the will which disposes of the personalty, imports a primary object, namely, a competent provision for the widow, which will recommend it to the consideration of the court. There is no introductory clause, such as is usually found in wills, directing the payment of debts. The bequest, therefore, has nothing about it of a residuary character. The only disposition made of the personalty, is in favour of the widow, to whom the whole is given. His intention clearly was to provide for her out of the personal estate, and it is a settled rule that effect must be given to a will, so as to make every legacy operate if possible ; but that intention must be frus-

(Case of Walker's Estate.)

trated, and the rule of law violated, if the personalty is to be swept away for the payment of debts. To give a legacy a specific character, so far at least as to exempt it from the burthen of debts, it is not necessary that it should be of a particular article. The same effect may be produced by a general bequest of the personalty. *Preston on Leg.* 83. *Ward on Leg.* 18. A bequest of all the testator's personal estate at *W.* is specific, and will pass all his personal estate at *W.*, even what was not there when the will was made. *Sayer* v. *Sayer,* 2 *Vern.* 688. To apply the personalty in this instance to the discharge of the debts, would be in the highest degree hard and unjust. The heirs of the real estate acquired after the making of the will, are also the devisees of nearly the whole of the real estate of which the testator was seized when he executed that instrument; and they ask to have the debts paid wholly out of the personalty, so as to exonerate their estate from charge, while the widow, for whom the testator intended an ample provision, is left wholly destitute. This could not be done even in *England,* where the heir is so much favoured, and still less can it be done in *Pennsylvania,* where realty as well as personalty is assets for the payment of debts, and where both descriptions of property flow in the same channel of descent. There is therefore no reason for burthening the latter in exoneration of the former. *Ruston* v. *Ruston,* 2 *Dall.* 245. *S. C.* 2 *Yeates,* 54-70. If there is a plain implication of an intention to exempt the personal estate, it shall be exempted. *Walker* v. *Jackson,* 2 *Atk.* 624. In that case the controversy was between those who claimed the personal and those who claimed the real estate under the will, which distinguishes it, favourably for the appellant, from the present case, in which the effort is to charge the real estate not embraced by the will, which being left by the testator undevised, he evidently intended should bear the burthen of his debts. To cast them upon the personal estate bequeathed to the widow, would be virtually to revoke the will. Even a residuary bequest has been held to be specific, and creditors who claimed to be paid out of the personalty, turned over to the realty. *Adams* v. *Meyrick,* 2 *Atk.* 626, *note.* If the debts be great, the bequest of the personal estate would come to nothing, which, it is said, the law deems the worst construction that can be given to a will. *Wainwright* v. *Benlows,* 2 *Vern.* 718. Where the intention of the testator is to make provision for his widow or children, it must, if possible, be carried into effect. Thus where the testator devised to his wife an estate encumbered by a mortgage, and the personal estate was insufficient to pay it off, Lord *Hardwicke* decreed that the estate of the wife should be exonerated out of the real estate which descended to the heir; reversing his former decree as to this point, after a year's consideration. *Galton* v. *Hancock,* 2 *Atk.* 436. A legacy to a wife in lieu of dower does not abate with other legacies. *Davenhill* v. *Fletcher, Ambler,* 244. In *Bamfield* v. *Wyndham, Prec. in Ch.* 101, land was devised to trustees to sell and pay debts, and to pay the overplus to the testator's sisters. All the personal estate was be-

(Case of Walker's Estate.)

queathed to his wife, but the amount of debts exceeded the value of the personalty, and the lord chancellor said he must mean that his widow should have it exempt from debts or he must mean nothing. And in *Leffert* v. *Carter*, 1 *Ves.* 499, real estate devised to a son was subjected to the payment of a daughter, who would have been unprovided for, if the personal estate had been applied to that object.

That the testator intended that the real estate acquired after the execution of the will should be the fund for the payment of his debts, is to be inferred from his making no disposition of it, but leaving it to descend according to law. This fund is always resorted to where it is necessary, in order to give effect to the dispositions of the will. *Hayes* v. *Jackson*, 6 *Mass. Rep.* 151. *Livingston* v. *Livingston*, 3 *Johns. Ch. R.* 148. 153. *Livingston* v. *Newkirk*, *Id.* 319. In *Hanby* v. *Roberts*, *Ambler*, 128, Lord *Hardwicke* says, the rule is clear, that where there are debts by specialty and legacies, and no devise of the real estate, but it descends, if creditors exhaust the personalty, the legatees may stand in their place, and come upon the real estate, against the heir at law. In that case too, the legatee appears to have been a stranger. It is the constant rule, to put legatees in the place of creditors, when the latter exhaust the personal estate. The only description of legatees, who are not entitled to have the lands applied, are residuary legatees. *Burton* v. *Pierpoint*, 2 *P. Wms.* 81. *Rider* v. *Wager*, *Id.* 335. *Tipping* v. *Tipping*, 1 *P. Wms.* 729. *Clifton* v. *Burt*, *Id.* 678. *Sigourney* v. *Jackson*, 6 *Mass. Rep.* 149. The case of *Commonwealth* v. *Shelby*, 13 *Serg. & Rawle*, 348, greatly resembles this. There the testator made certain specific bequests of personal property to his widow, and devised his real estate to his sons, giving pecuniary legacies to his daughters, and charging both his real and personal estate with the payment of debts and legacies. He also left real estate which did not pass under the will, and the rules laid down for the administration of the assets were, 1st, That the specific bequests to the widow were to remain untouched. 2nd, That the residue of the personal estate was then to be applied to the payment of the debts. 3d, That the lands descended were to be applied to that object, and *lastly*, the lands devised. The only difference between this case and the one under consideration, is, that in the former the bequest to the widow was of certain portions of the personal estate, while in the latter, the whole was given to her. The only question therefore is, whether the bequest to Mrs. *Walker* is specific, and the authorities already cited show that it is.

*Atherton* and *Binney* for the appellees.—The primary fund for the payment of debts in *Pennsylvania* is personal estate. Real estate is only a contingent fund, and whoever endeavours to maintain an opposite position, must establish an exception to the general rule. The exception attempted to be proved in this case is, that the legacy to the wife is specific, and it is contended that where the personalty is specifically bequeathed, and there is descended real estate, the latter, in equity, must bear the burthen of debts. The basis of this argu-

(Case of Walker's Estate.)

ment is an assumption that the legacy to Mrs. *Walker* is specific, which is a mistake. There are two descriptions of specific legacies in the understanding of an equity lawyer. The *first*, where a particular thing in the possession of the testator at the time, and capable of being delivered in specie, is separated from the general mass of the personal estate. 1 *Roper on Leg.* 149. 155. 184. *Preston on Leg.* 69. 82. 83. 85. The *second*, a general bequest with this qualification, derived from the intention of the testator, that other property is made to bear the charge, which in ordinary circumstances would belong to the property bequeathed. The essence of bequests of this sort is, the intention, that the legatee shall take clear of all charge. This is the chancery sense of a specific bequest. That the bequest to Mrs. *Walker* was specific in the first or common law sense of the term, cannot be contended for. It has no feature belonging to that class. It comprehended all the personalty which the testator then had, or might have at the time of his death. There is no limitation of time, place or amount. *Preston* and *Ward* both show that there must be some restriction; an enumeration of particular articles at the commencement of the bequest comes to nothing, when followed by a sweeping clause giving every thing. There is no authority to show that any part of such a bequest is specific. The authorities all prove it to be general. *Bowaman* v. *Reeve, Prec. in Ch.* 577. *Attorney General* v. *Parkin, Amb.* 566. 1 *Merriv.* 198. 211. There is in fact scarcely any general bequest of personal property in which there is not some enumeration of particulars. *Todd* v. *Todd*, 1 *Serg. & Rawle*, 453, was a much stronger case than this, yet there the legacy was held not to be specific. It is clear then that this case does not come within the common law sense of a specific legacy.

In relation to the chancery sense of the term, there was in early times some conflict of authority, but the doctrine has now settled down. There is however no conflict of authority respecting the rule in its application to this case. It is said, that the legacy is specific, by reason of an inference from other parts of the will, that the testator intended, that this part of his estate should not be charged. There is nothing in the will to show an intention to exempt the personal estate from the debts, and put them uopn the lands. Such an intention is not to be made out by fanciful conjecture. It must appear either from express words, or arise from necessary implication; it must be an intention not merely to charge the realty, but to discharge the personalty. 1 *Madd. Ch.* 588. 1 *Roper on Legacies*, 475. 484, and the cases there cited. In the will in question, there is no charge upon the land, and there is no case, in which, where there are no express words of exemption, an intention to exonerate the personalty has been inferred, without a charge upon the realty, or a trust to sell for the payment of debts. All the devises in the will of *Samuel Walker*, except that to the widow, are specific. They are to trustees, who have no power to sell or to mortgage, and there is not a syllable in the whole instrument indicating an intention, that

(Case of Walker's Estate.)

the widow was to enjoy her legacy discharged of debts. If it be said, he had no debts, then the subject was not in his mind at all, and he could not have intended to charge the land with what did not exist; still less could he have intended to cast such a charge upon land, which did not then belong to him. If his mind was not directed to the subject, the whole argument is destroyed, for it is altogether a question of intention. The opposite argument goes the whole length of saying, that every general bequest of personalty is specific as regards every thing but the real estate specifically devised, and throws the debts on the estates which descended. If the descended estates are to be charged, it must be by operation of law, and not by force of the testator's intention. If there was no intention on the subject, when the will was made, the acquisition of real estate afterwards, without republication of the will, cannot alter the state of things at the execution of the instrument. The acquisition of lands, on which the mind was never brought to bear, affords no argument in favour of intention. Nor does the position of the bequest in the will, its being first named, afford the slightest inference, that he intended it should be first paid; nor is the circumstance, that the legacy is to the widow, sufficient to overrule the principles of law, which have made the personal estate the primary fund for the payment of debts. The absence of a clause directing that his debts shall be paid, furnishes no presumption, that he intended they should not be paid out of the natural and proper fund, the personal estate. In contemplation of law, such a clause is in every will, because in *Pennsylvania*, all property is liable for debts in the order prescribed by law.

The opinion of the court was delivered by

Rogers, J.—*Samuel Walker*, on the first day of *March*, 1820, made his last will and testament, and devised and bequeathed, unto his wife, *Elizabeth Y. Walker*, his two messuages and lots, situate on the south side of *Sassafras* street, between *Delaware Front* and *Second* streets, in the city of *Philadelphia*, with the appurtenances; also, all his household goods and furniture, moneys, bonds, mortgages, outstanding debts due and owing to him, and all other his personal estate, of what nature or kind soever.

He devised to *Thomas Betts* and *Joshua Canby*, and the surviver of them, &c. certain other messuages, and lots of ground, (particularly describing them,) in trust for his son *Samuel Jones Walker*, &c. and after his decease, in trust for his children, &c. and for want of children, then for the separate use of his daughter, *Ann D. Harper*, &c.

He also devised to the same trustees certain other messuages, tenements, and lots of ground, &c., in trust, for the separate use of his daughter *Ann D. Harper*, &c.

And lastly, he the said *Samuel Walker* wished it to be understood, as his will and intention, that the husband of his said daughter, *Ann*

*D. Harper*, shall not in any event, nor by reason of any cause, ways, or means whatsoever, have any right, claim, or interest in his estate, in right of his wife, or otherwise, nor receive any benefit or advantage therefrom.

These devises included the whole property of the testator, at the time, but subsequent to the date and making of the will, *Samuel Walker* acquired certain real estate. The testator died the first day of *December*, 1824, without having republished his will, or adding any codicil thereto, disposing of the said real estate, which of course descended to his heirs at law.

The testator being indebted to various persons, the executors made an application to the Orphan's Court, praying an order to sell the descended lands for the payment of debts, *Elizabeth Y. Walker*, the widow and legatee, claiming all the personal estate of the testator, alleging, that the bequest to her is specific, exempted from the payment of debts due by the testator, and that the payment of them devolves upon the land descended to the heirs. The question between the heirs and the legatee is, which fund is primarily liable for the payment of debts.

It is a general rule, that in the absence of a contrary intention, the personal estate is the first and natural fund for the payment of debts. But the testator may substitute the real fund in the room of the personal, which may be done, either by express words, or by a plain intention manifested by the different provisions of the will.

The counsel, for the appellants, contend, that the lands descended, are primarily liable on two grounds.

*First.* That the legacy to the wife is specific, and *secondly*, That it is manifest, the testator intended, that she should have the legacy, exempted from the payment of the debts.

A regular specific legacy may be defined, the bequest of a particular thing, or money specified and distinguished from all others of the same kind, as of a horse, or piece of plate, money in a purse, stock in the public funds, a security for money, which would immediately vest with the assent of the executor. 1 *Roper*, 149.

There are also, bequests of general personal estate, which are sometimes specific, as when the thing given is distinguished and separated from the general estate, and specifically bequeathed, and capable of being delivered in specie. Thus, if *A.* bequeath to *B.* all his personal estate at *C.* or in a particular house, or country, the legacy will be a specific. So a bequest of all the goods, &c. in a particular place, or of all the goods and chattels in a described country, or of all plate, linen and furniture in the testator's house at *A.* or which shall be therein at the time of his decease; in such cases the bequests are specific, for they are confined in their extent, and fall within the description given of such legacies. The money, goods, &c. are so described by the testator, as to authorize the legatee to say to the executor, deliver the sum bequeathed to me, which is in a particular chest, bag or purse, or the goods which are in a particular room, or

(Case of Walker's Estate.)

in a described country, or in the testator's house at *A.* or which are there at the time of his decease. *Sayer* v. *Sayer*, 2 *Vern.* 688. *Prec. in Ch.* 392. 5 *Ves.* 150, 156. *Nesbitt* v. *Murray*, 8 *Ves.* 617. 623. *Sadler* v. *Turner*, 1 *Bro. C. C.* 129. 127. *Moore* v. *Moore*, 2 *Vern.* 538, *Gayre* v. *Gayre*, 2 *Vern.* 747. *Shaftesbury* v. *Shaftesbury*, 1 *Roper*, 185.

But, when the language of the bequest is such that neither by reference to any collateral thing, can the money bequeathed be distinguished from the testator's other moneys, nor a clear intention be perceived to give a specific part of his personal estate, such a bequest will be general. It does not fall within the description which has been given of a regular specific legacy. The legatee is unable to point out to the executor any particular sum of money, or chattel, that he can call his own, as he had the power to do in the instances · enumerated. The legacy, therefore, must necessarily be general. Since then a bequest of personal estate requires, as before mentioned, to be limited or controlled to some particular place, or to be referred to, as in some person's hands, in order to make it specific, it follows, that if there are no such restrictive expressions, a legacy of personal estate generally will be general. A bequest of all a person's personal estate generally is not specific. The very terms of such a bequest show, that it is general, and even, if the real and personal estate were devised as here, neither the circumstance of the bequest of the personal property being in the same sentence as the real, the devise of which is necessarily specific, nor the circumstance of the real and personal being disposed of together, would be sufficient to constitute the disposition of the general personal property a specific legacy. 7 *Ves.* 137. *Howe* v. *The Earl of Dartmouth.*

And what is this bequest but a disposition of all the personal estate of the testator? He bequeaths to the legatee all his household goods, and furniture, moneys, bonds, and mortgages, outstanding debts due and owing to him, and all his personal estate of what kind or nature, soever. He first enumerates the particulars of which his personal property consists, and then closes the sentence with a sweeping disposition of all his personal estate. It is as strong, but not more so, as if he had said, I give all my personal estate of what kind or nature soever, to *Elizabeth Y. Walker.* The enumeration of particulars does not affect the generalty of the bequest. *Precedents in Ch.* 577. *Amb.* 566. 1 *Merriv.* 198. In the argument of the last case, the counsel say, in regard to the enumeration of articles, with which the clause in the will is introduced, he did not wish to be mistaken in contending, that such an enumeration alone will render a bequest specific. The whole bequest must be taken together, for the intention of the testator on this subject, as in every question on the construction of wills, is the principal object to be ascertained. It is, therefore, necessary, that the intention be either expressed in reference to the thing bequeathed, or otherwise clearly appear from the will, to con-

stitute the legacy specific.  The presumption, both in law and equity, is in favour of general legacies, unless it can be clearly ascer-' tained by the will, that the testator intended to confer on the legatee some article, of which he was at the time of making the will, possessed.  And this is a rule of construction adopted for the benefit of the legatee.  *Amb.* 310.  *Ellis* v. *Walker,* 4 *Bro. C. C.* 345.  *Simmons* v. *Vallance, Ambler,* 56*y.*  *Attorney-General* v. *Parkin,* 1 *Ves. Sen.* 425.  *Avelyn* v. *Ward,* 4 *Ves.* 555.  *Chaworth* v. *Beech,* 4 *Ves.* 568. *Innes* v. *Johnson,* 1 *Swinb.* 244. 7 *Ves.* 522. *Sibley* v. *Perry,* 15 *Ves.* 388.  *Gillman* v. *Addely.*

It cannot be contended, with any hope of success, nor has it been attempted, that the testator intended to confine the bequest to his wife, to the property which he possessed at the making of the will. There is nothing in the will which indicates such an intention.  And'yet specific bequests, as defined, are gifts, by will, either of some particular thing, or part thereof, or of some specified or identical fund, or article, or part thereof, of which the testator was *possessed,* at the *time* of making *his will,* so as clearly to point out, what, in particular, was intended for the legatee.  *Preston on Legacies,* page 83, and *Ward on Legacies,* 18, and the authorities there cited.  Had the lands, which are specifically devised, been sold by *Samuel Walker* in his life-time, and converted into money, *Elizabeth Y. Walker* would hardly have contended that this was a specific bequest, which operated only on *the personal estate of which the testator was possessed at the date of the will.*  In such a case we are warranted in believing she would have claimed all the personal property left at the death of the testator.  And this, in effect, she does now.  She never attempts to discriminate between the estate, held at the date of the will, and the estate of which he died possessed.  She claims the whole personal effects, to which, for aught that appears, she is only entitled as a general legatee, and at the same time calls in the aid of the descended lands, on the ground that the legacy to her is specific, and not liable to the creditors, until the descended lands are exhausted.

The general rule in marshalling assets, so far as regards this case, is thus settled.  1*st.* The personal estate, excepting specific bequests, or such of it as is exempted from the payment of debts.  2*d.* The real estate which is appropriated in the will as a fund for their payment.  3*d.* The descended estate, whether the testator was seized of it when the will was made, or it was afterwards acquired.  It has been shown, that the legatee has no right to claim an exemption of the personal assets, on the ground that the bequest to her is specific. The next inquiry will be, whether any thing appears, which shows an intention on the part of the testator, to exempt his personal estate from the payment of debts.  In order to exonerate this personal fund, the will must contain express words for that purpose, a clear, manifest intention, a plain declaration, or a necessary inference, tantamount to express words.  The question, in each particular case of exemption, resolves itself into this:  Does there appear from the

whole testamentary disposition, taken together, an intention on the part of the testator, so expressed, as to convince a judicial mind, that it was meant not merely to charge the real estate, but so to charge it, as to exempt the personal? For it is not by an intention to charge the real, but by an intention to discharge the personal estate, that the question is to be decided. There is nothing in the will of *Samuel Walker*, clearly, which manifests an intention to charge his real estate with the payment of his debts, nor would that be necessary, as between the legatee and the heirs of the land descended, provided it was manifest he intended to exempt his personal estate ; and this is the great difficulty with which the legatee has to contend. And this intention we are required to infer, from something which has occurred since the date of the will. The testator disposed of all his property, real and personal, and as between the devisees in the will, it is not to be questioned, that the personal estate would be liable to the debts. It would be a singular construction, to infer an intention to charge lands with the payment of debts, which the testator acquired after making his will; and the case of *Hayes* v. *Jackson*, 6 *Mass. R.* 149. decides that a testator cannot, in his will, charge after purchased land any more than he can devise them. The case which bears the strongest analogy to the present, is the one just cited. The rule as laid down by Chief Justice Parsons, is applicable here. The case was this : The testator ordered his debts to be paid ; made a specific devise of certain lands to his sister, and devised all the residue of which he should die seized, to a residuary devisee. He died seized of lands purchased after the making of the will, which, of consequence, did not pass. The executors applied for license to sell real estate for the payment of debts. The court directed them, first to sell the devised lands not included in the specific devise, and next, the lands which descended to the heirs. The Chief Justice says, " *Jackson* first provides that his debts and funeral charges be paid; he next bequeaths legacies to his nephews and neices, and makes a specific devise to his sister *Susanna Gray*. Then he gives to Mrs. *Swan*, in fee, all the remaining part of his estate, real and personal; the just construction of which is, when my debts and funeral charges, and the legacies are paid, and the specific devise to my sister is deducted, then what remains, whether real or personal, I devise, in fee, to Mrs. *Swan*." In one respect, this is a stronger case than the present, for here the court ordered the real, as well as the personal estate, devised to Mrs. *Swan*, to be sold, before the descended lands. A distinction has been attempted between the cases, and it is true, that they are not in every feature exactly alike, which, indeed, is seldom, if ever, the case in precedents on the construction of wills. It is objected, that here there is no direction to pay debts, and that this is the case of a primary, and not a residuary devisee. To this I answer, that every testator is presumed to know the law of the country in which he lives, and to make his will in reference to it. The estate of the testator is equally bound, without as with such a direction, and in the order that

has been indicated.    Such a clause in the will, although usual, is by no means necessary in *Pennsylvania*.    The personal fund is the first in order for the payment of debts, whether mentioned in the will or not, and this is not doubted, as between the devisee of the real estate and the legatee, and how it can make any difference as regards the heirs of the descended lands, I am at a loss to discover.    It is hardly necessary to quarrel about terms, but *Elizabeth Y. Walker* is nothing more nor less than a residuary legatee.    The intention of the testator, at the time of the making of the will, most certainly was, that after his debts and funeral charges were paid, then what remained he bequeathed to his widow and legatee.    If nothing remained, then nothing is bequeathed to her.    It cannot in any sense be considered as a specific bequest of the remainder to her.    The law creates the fund for the payment of the debts, and the testator bequeaths to her what remains, after satisfying the requisitions of the law.    If this be the true reading of the will, then *Elizabeth Y. Walker* will get precisely what the testator intended she should have, *viz.* all that remained of his personal estate, at the time of his death, after payment of the charges which the law imposes on the fund.    And here it is material to observe, that this bequest is neither specific in the legal sense, nor in the sense in which it is sometimes so considered by a court of chancery.    The amount of the bequest is not ascertained in the will.    Whether more or less, depended upon the state of his property at the time of his death.    It is not then specific as regards quantity or amount.    In this respect it differs from an ascertained specific legacy, as say a legacy of five hundred pounds to *A*.    It is to the latter class of cases, that Lord *Hardwicke* refers, in *Galton* v. *Hancock*, when in speaking of the case of *Clifton* v. *Burt*, 1 *P. Wms.* 678, he says, " This case proves that even general pecuniary legatees are to be preferred to an heir at law, much more a specific devisee of land, and this, too, in analogy to the rule of law; for every devisee is in the nature of a purchaser, and so it is laid down in *Herbert's* case, 3 *Co.* 12, that the heir shall not have contribution against any purchaser, although, in *rei veritate*, the purchaser came to the land, without any valuable consideration, for the consideration of the purchase is not material in such a case." *Tipping* v. *Tipping, Id.* 729.

A court of chancery considers the bequest so far specific, as to throw the debts of the deceased on the lands descended; and it is difficult to discover any difference between such a bequest, and a bequest of a specific chattel.    The testator indicates his intention that the legatee should have the one, as strongly as the other, and it is on the principle of intention, that in marshalling the assets, the court directs the creditors, who have liens upon two funds, to exhaust the lands descended, before they levy on the personal estates specifically devised.

This is a contest between the legatee and the heirs of the testator, and not, as has been alleged, between her and the husband of *Ann*

*D. Harper.* It is true, that by this decision, he will acquire an interest in the estate, for life, and if this was real estate, which the testator owned, and which he had in contemplation when he made his will, there would be some strength in the argument. It would be wandering in a labyrinth of conjecture, to speculate about the reasons which prevented the testator from republishing his will, and disposing of his after-acquired property. Nor can we be expected to deprive the heirs of the fee simple of the estate, merely in order to prevent the husband of one of them from acquiring an interest in it. Such a construction would, in all probability, defeat the general intention of the testator, for no person can read the will without perceiving that the children are as much the objects of his bounty, as the widow. But however strongly the testator may indicate his intention to exclude the husband of his daughter, it may be doubted whether this will affect after-acquired real estate. This principle is explicitly declared in *Hays* v. *Jackson*, 6 *Mass. R.* 156. The testator cannot, in his will, charge with the payment of his debts, after-purchased lands, any more than he can devise them.

Decree of the Orphan's Court affirmed.