FILED
United States Court of Appeals
Tenth Circuit

January 25, 2023

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CARL GENE ORTNER, JR.,

    Defendant - Appellant.

No. 21-5075
(D.C. No. 4:20-CR-00237-JFH-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Defendant Carl Gene Ortner, Jr. was convicted after a jury trial of transportation of a minor with intent to engage in criminal sexual activity, 18 U.S.C. § 2423(a) (Count 1); sexual abuse of a child in Indian country, 18 U.S.C. §§ 1151, 1152 & 2243(a) (Count 2); abusive sexual contact in Indian country, 18 U.S.C. §§ 1151, 1152 & 2244(b)(3) (Count 3); possession of parts of a bald eagle 16 U.S.C. § 668(a) (Count 4); and possession of parts of a golden eagle, 16 U.S.C. § 668(a) (Count 5). He was sentenced to concurrent terms of life as to Count 1; 180 months as to Count 2; 24 months as to Count 3; 12 months as to Counts 4 and 5; and supervised release of varying terms in the event

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

he was ever released from imprisonment.  On appeal, he argues that the jury instructions for Count 1–3 constituted plain error due to a lack of an accurate explanation of criminal intent and specification of an underlying state offense (Count 1) and failing to require a finding that Mr. Ortner was a non-Indian (Counts 2 and 3).  He also argues that the district court erred by (1) failing to sever the sex offense counts (1–3) from the eagle parts counts (4–5), and (2) imposing a $100,000 fine.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## Background

In 2016, Mr. Ortner, then 53-years-old, met S.W., then 14-years-old and a member of the Wyandotte Nation tribe.  At the time of their introduction, S.W. and her parents, Mr. and Mrs. Wright, were grieving the death of S.W.'s sister, who had been involved in a fatal car accident one year earlier.   S.W. became acquainted with Mr. Ortner by virtue of her participation in tribal powwows, where she and Mr. Ortner would perform traditional dances.  Mr. Ortner began to spend time with S.W.'s family, offering to help S.W. recover from the loss of her sister.  To affiliate with her family and to get close to S.W., Mr. Ortner portrayed himself as a member of the Native American community. Mr. Ortner gave S.W. regalia he constructed from eagle feathers for her to wear in tribal dances.  Such items are considered sacred and a great honor to receive from an elder in the tribal community.

Mr. Ortner was not registered as a member of any tribe, and during an investigation, Mr. Ortner "advised that he was not Native American."  3 R. 194. However, the record suggests that Mr. Ortner was informally accepted as an elder in the

2

Indian community.  3 R. 107, 179–80.  Mr. Ortner gave S.W. eagle feathers and bought S.W. other gifts, including jewelry and underwear Mr. Ortner termed "big girl panties."  3 R. 64.  At a certain point in their relationship, Mr. Ortner began to engage in a pattern of abuse.  At first, S.W. described "sensual touching," groping, and kissing, while the pair played basketball at a gym on Wyandotte land.  3 R. 59–61, 68–69.  Around November 2017, S.W. testified that outside a convenience store on Wyandotte, Mr. Ortner touched her under her clothes and put his hand in her vagina.  3 R. 67.

In January 2018, Mr. Ortner traveled to Joplin, Missouri from Wyandotte, Oklahoma, with S.W, who was 15.  See 3 R. 70–71.  At trial, S.W. stated that leading up to this trip, Mr. Ortner asked her various questions related to sex.  Mr. Ortner described the trip as an errand relating to his work for an advertising agency and testified that S.W. "ran with [him]."  3 R. 70, 250.  The government theorized that Mr. Ortner had planned to have sex with S.W. in Joplin, where that plan was realized.  Aplee. Br. at 8.  S.W. testified that on this trip they had sex for the first time, in a conference room at Mr. Ortner's office at night.  3 R. 72–73.  Mr. Ortner recalled that the trip occurred in daylight and that he waited until after the trip to have sex with S.W., when she would turn 16.  3 R. 250–51, 275, 310–11.  S.W. recounted multiple sexual encounters following the Joplin trip, in various locations including Mr. Ortner's home and car.

In April 2018, the abuse was reported by S.W.'s high school after S.W. sent a Snapchat message to high school friends, prompting a law enforcement investigation.  In August 2018, officers searched Mr. Ortner's home, through which officers discovered bald eagle and golden eagle parts.  The parties agree that these parts/feathers were not the

3

same as those used to lure S.W., as the latter were ceremonially burned and buried before execution of the search warrant.

The district court denied a pretrial motion to sever the sex counts from those involving eagle parts, finding evidentiary overlap and de minimis potential prejudice. At trial, the jury learned that in 2019, Mr. Ortner pled guilty to a state charge of second-degree rape of a minor. 3 R. 297, 304. Also admitted: Mr. Ortner's prior sworn statement that between November 17, [2017] and April 18, [2018], he had sexual intercourse with S.W. who was under the age of 16 at that time. See 3 R. 304–05. The jury was instructed that it could consider the state conviction for the purpose of impeachment only. 3 R. 346. At the close of evidence, as to Counts 2 and 3, the government dismissed the § 1153 charges and proceeded only under § 1152, given the lack of evidence that Mr. Ortner was an Indian. Mr. Ortner did not object. 3 R. 335.

**Discussion**

I.     **Jury instructions as to Count 1**

   A. **Purpose**

Mr. Ortner challenges the district court's instructions to the jury as to Count 1. Having raised no objection at trial, our review is for plain error. United States v. Smalls, 752 F.3d 1227, 1245 (10th Cir. 2014). To that end, the court "examine[s] the[ ] [instructions] as a whole to determine whether the instructions provided the jury with an accurate statement of the applicable law." United States v. Harmon, 996 F.2d 256, 258 (10th Cir. 1993). To warrant reversal under this standard, the district court must have committed (1) legal error, (2) that was clear and not reasonably debatable, (3) which

4

violated the Defendant's substantial rights, and (4) was so grave as to "seriously affect the fairness, integrity or public reputation of judicial proceedings." Puckett v. United States, 556 U.S. 129, 135 (2009).

The court instructed the jury as follows:

The Defendant can be found guilty of [18 U.S.C. § 2423(a)] only if all of the following are proven beyond a reasonable doubt:

> First:     The Defendant knowingly transported a person in interstate commerce;

> Second:     At the time of the transportation, that person was less than 18 years of age; and

> Third:     At the time of the transportation, the Defendant intended that person would engage in unlawful sexual activity for which someone could be charged with a crime.

1 R. 141.

Mr. Ortner argues the instruction is faulty because it does not require the jury to find (i) defendant's dominant purpose in taking S.W. to Missouri was for her to engage in illicit sexual activity and (ii) defendant violated a specific criminal statute. Mr. Ortner argues that the jury wasn't told that illicit sexual activity needed to be a "motive— dominant or otherwise—for the interstate transport of the minor." Aplt. Br. at 13 (emphasis in original).

We find no error, plain or otherwise. As a whole, the instructions "provided the jury with an accurate statement of the applicable law." United States v. Scisum, 32 F.3d 1479, 1484 (10th Cir. 1994). The instructions properly focused Mr. Ortner's intent at the time of the interstate transportation and ensured the jury found an aim of the trip was to engage in unlawful sexual conduct. See 18 U.S.C. § 2423(a); United States v. Scott, 529

5

F.3d 1290, 1303 (10th Cir. 2008). As for the requisite motive, the "illicit sexual activity need not be the <u>only</u> purpose" for the trip but is enough if it was one of the defendant's motivating purposes. <u>United States v. Lacy</u>, 904 F.3d 889, 901 (10th Cir. 2018) (emphasis added). The word "intent" is "of common enough usage to be clear to any reasonable lay juror." <u>Scisum</u>, 32 F.3d at 1485. The instructions thus reflected our precedent and plain error only occurs when a claimed error violates "current well-settled law." <u>Lacy</u>, 904 F.3d at 893. That additional explanation might have been given does not mean that the absence of such language constitutes plain error. <u>Cf.</u> <u>United States v. Knight</u>, 659 F.3d 1285, 1293 (10th Cir. 2011) (finding no plain error because although defendant "point[ed] to several cases in which courts distinguish[ed] between actual and constructive possession, he d[id] not identify any case—much less a Tenth Circuit or Supreme Court decision—holding that failure to provide a constructive possession instruction is erroneous").

## B. Criminal sexual conduct

Defendant's next assertion—that 18 U.S.C. § 2423(a)'s third element requires the jury to find that the government proved violation of a specific criminal statute—is not something this court has ever held. The government notes that the court did not instruct on the specific state statute which would make the contemplated sex unlawful given the age difference between Mr. Ortner and S.W., but that the age difference would have rendered the sex unlawful in any jurisdiction. Aplee. Br. at 30 (citing Mo. Ann. Stat. § 566.034 for second-degree statutory rape); <u>id.</u> at 35. The issue of whether the violation of a specific state statute is an element of the offense or merely a means of proving the

third element is one on which courts may differ.  Compare United States v. Doak, 47 F.4th 1340, 1352 (11th Cir. 2022) (state offenses were means; § 2423(a) "turn[s] on whether [the defendant] intended the girls to commit some criminal sexual act—not whether he ultimately forced them to commit one specific criminal sex act or another"), with United States v. Ray, 831 F.3d 431, 434 (7th Cir. 2016) (state offenses were elements; "Section 2423(a) creates a piggyback offense: The prosecution must show that the sexual activity after crossing the state line violated some other statute.").  But it is not one we must address given Mr. Ortner's failure to raise it before the district court and our plain error review.  Where there is such variation in approaches, it cannot be plain error.

## II.    Jury instructions as to Counts 2 and 3

As noted, Counts 2 and 3 were submitted under the General Crimes Act, 18 U.S.C. § 1152 only.  See 3 R. 332–35.  The court instructed the jury regarding the government's statutory burden to prove S.W. was an Indian and that the crime was committed in Indian Country.  1 R. 142–45.  The court also instructed the jury that a person is considered Indian if he has "some Indian blood" and "was, at the time of the offense, recognized as an Indian by a federally recognized tribe or by the federal government." Id. 146.  The jury was further provided a multi-factor test to determine whether Indian recognition exists. Id. 147.  Defendant faults the district court for not requiring the government prove, for purposes of § 1152, that Mr. Ortner was non-Indian.  See 18 U.S.C. § 1152 (excluding offenses "committed by one Indian against . . . another Indian").

The government concedes error not to require proof of Mr. Ortner's non-Indian status.  Aplee. Br. at 37; United States v. Prentiss, 256 F.3d 971, 978 (10th Cir. 2001).

However, the failure to do so did not violate Mr. Ortner's substantial rights, given an absence of evidence Mr. Ortner had any Indian blood, required under any conception of Indian (including Mr. Ortner's) for purposes of § 1152.[1]

While there is no specific percentage of Indian blood required to render a person Indian, 1 Cohen's Handbook of Federal Indian Law § 3.03[4] (LexisNexis 2019), some quantum is required. United States v. Prentiss, 273 F.3d 1277, 1280 (10th Cir. 2001). Leading legal authorities agree. Cohen § 3.03[4]; RESTATEMENT OF THE L. OF AM. INDIANS § 69 (AM. L. INST. 2022). The record lacks evidence that Mr. Ortner possessed any Indian blood.

In his opening brief, Mr. Ortner cites to evidence he believes supports his Indian status, including his participation in tribal powwows and the fact that tribal members asked him to prepare feathered regalia. Aplt. Br. at 28–30. At trial, Mr. Ortner's childhood friend, Beverly Lawellin, testified that Mr. Ortner did have Indian blood "[a]ccording to records that were passed down." 3 R. 240. And Mr. Ortner's sister, Christine Thomas, testified she "believe[d]" their great-grandfather was deeded land from the Cherokee and both she and Mr. Ortner claimed they were raised to believe they were Indian. Id. 232–33, 300. However, at the same time, Ms. Thomas admitted that no

---

[1] In reply, Mr. Ortner argues that the government does not challenge the element of Indian blood. Aplt. Reply Br. at 10 n.7. However, the government's statement that "[t]he evidence supported no finding that [Mr.] Ortner is 'an individual who has Indian blood'" sufficiently raises this argument and both sides briefed the issue. See Aplee. Br. at 37 (quoting Cohen's Handbook of Federal Indian Law 24 (Rennard Strickland et al. eds. 1982)); Aplt. Br. 28–30. Therefore, our review is appropriate.

member of their family had procured enough records to get a tribal membership card recognizing their membership in any particular tribe. Id. 232. While lack of tribal membership does not foreclose a finding of Indian status, Prentiss, 273 F.3d at 1283, the absence of such evidence here suggests that Mr. Ortner did not have Native American ancestry of note. And Ms. Lawellin's unsubstantiated opinion testimony is insufficient evidence to demonstrate Mr. Ortner possessed "some quantum" of Indian blood, as required under extant law. Cf. United States v. Reza-Ramos, 816 F.3d 1110, 1121 (9th Cir. 2016) ("Reliable or undisputed documentation that a defendant has Indian blood . . . may meet [the blood-quantum] requirement."); United States v. Bruce, 394 F.3d 1215, 1223 (9th Cir. 2005) ("[E]vidence of a parent, grandparent, or great-grandparent who is clearly identified as an Indian is generally sufficient to satisfy [the blood-quantum element]."). Thus, under these circumstances, failing to require proof that Mr. Ortner was not Indian was not plain error.

## III.    Joinder of Sex and Feather counts

Mr. Ortner contends the district court erred in denying his pretrial motion to sever Counts 1–3, from Counts 4–5. Under the Rules of Criminal Procedure, counts may be joined in a single indictment if the offenses "[(i)] are of the same or similar character or [(ii)] are based on the same act or transaction or on two or more acts or transactions connected together or [(iii)] constituting parts of a common scheme or plan." Fed. R. Crim. P. Rule 8(a). The third basis is relevant here. While we review alleged misjoinder de novo, we construe Rule 8 liberally to promote judicial economy, United States v. Johnson, 130 F.3d 1420, 1427 (10th Cir. 1997), recognizing that the decision to grant

severance "lies 'within the sound discretion of the trial court.'"  United States v. Hill, 786 F.3d 1254, 1272 (10th Cir. 2015) (quoting United States v. Valentine, 706 F.2d 282, 289 (10th Cir. 1983)).

Joinder was proper under Rule 8 because the feathers were "arguably related to and part of" Mr. Ortner's abusive tactics.  Johnson, 130 F.3d at 1427.  In the district court, Mr. Ortner argued that the joinder did not involve eagle feathers pertinent to the sex offenses and would create a "false impression among the jurors that Mr. Ortner is simply a bad man who engages in a wide variety of crime."  1 R. 21.  In his opening brief, Mr. Ortner argues that severance was warranted because the charged eagle feathers were not integral to the sex offense accounts.  He makes much of the fact that the feathers used to lure S.W. were destroyed before the search leading to discovery of the feathers underlying the possession counts.  We are not persuaded.  The trial evidence reflects that Mr. Ortner used the eagle feathers as a mechanism to gain the trust of the community and his victims.  Even if Mr. Ortner could demonstrate significant risk of prejudice (at the district court, he did not), the jury was instructed that it must consider each count separately, 3 R. 341–42, and we presume juries follow instructions.  United States v. Herrera, 51 F.4th 1226, 1273 (10th Cir. 2022); see also Zafiro v. United States, 506 U.S. 534, 539 (1993) (advising limiting instructions will often suffice "to cure any risk of prejudice").

10

In his reply brief, Mr. Ortner explains why the joinder cannot be harmless error under which the government would have the burden. We find no error (no abuse of discretion), so it is unnecessary to consider harmless error.

## IV.    The $100,000 fine

Finally, Mr. Ortner argues the district court abused its discretion by imposing the $100,000 fine in connection with his sentence. According to Mr. Ortner, the imposition of the fine was procedurally unreasonable and clearly erroneous because the record is contradictory and does not support his ability to pay. Aplt. Br. at 40–41. He also objects to the extent that the fine is based upon the government's untimely objection to the presentence report (PSR)'s finding that he was unable to pay. Id. at 39.

We review a monetary sentence "for 'reasonableness under a deferential abuse-of-discretion standard.'" United States v. Sanchez-Urias, 887 F.3d 1069, 1070–71 (10th Cir. 2018) (quoting United States v. Sharp, 749 F.3d 1267, 1291 (10th Cir. 2014)). Underlying factual determinations regarding a defendant's financial situation are reviewed for clear error. United States v. Trujillo, 136 F.3d 1388, 1398 (10th Cir. 1998). To the extent a defendant fails to object, a sentence is subject to plain error review. United States v. Brown, 314 F.3d 1216, 1228 (10th Cir. 2003).

11

Mr. Ortner argues the sentencing hearing was procedurally unreasonable insofar as the district court made inconsistent factual findings regarding his ability to pay.[2] Review of the record reveals three such findings.

- The PSR indicated Mr. Ortner lacked the ability to pay any monetary penalty or special assessment in relation to his sentence. At the sentencing hearing, the district court adopted the PSR's findings in full, including as to Mr. Ortner's inability to pay a fine. 1 R. 211–12.

- Soon thereafter, the government requested a fine for the first time because "Mr. Ortner had a job for 14 years that made somewhere around $100,000 and owns a home" and speculated that "I would think that there's sufficient money to pay a fine, even if nominal." Id. 218. Over Mr. Ortner's reference to his $89,000 in consumer debt, the district court determined Mr. Ortner had the ability to pay a fine of $100,000 based on his financial profile.[3] Id. 218, 221.

- Then, in an apparent change of course, the court declined to impose a special monetary assessment under 18 U.S.C. § 3014(a)(3), which states courts "shall" impose a $5,000 penalty "on any non-indigent person" in connection with certain offenses "relating to sexual . . . abuse of children." See 18 U.S.C. § 3014(a)(3)

---

[2] Mr. Ortner also contends that there is no quantitative support for his ability to pay.

[3] Relying upon Sanchez-Urias, 887 F.3d at 1071, the government argues that Mr. Ortner did not carry his burden of establishing his inability to pay because his PSR did not provide adequate financial information. Aplee. Br. at 42. But the PSR concluded that Mr. Ortner lacked the ability to pay the fine and in no way suggests that he refused to provide a financial profile. 2 R. 79.

12

(emphasis added); 1 R. 221–22 (ordering "a mandatory $100 special monetary assessment per count as to Counts 1 through 3, and a $25 special monetary assessment per count as to Counts 4 and 5" but seeing "no reason or basis to find a special monetary assessment pursuant to Title 18, U.S.C., Sections 3014(a)(3)").

According to statute, the only exception to the mandatory additional special assessment is indigency, a conclusion other courts have reached. See 18 U.S.C. § 3014(a)(3); e.g., United States v. Shepherd, 922 F.3d 753, 757 (6th Cir. 2019) (explaining that § 3014 "uses mandatory language, leaving no room for discretion" and that "the district court has no choice but to impose the $ 5,000 assessment if it determines that the defendant is non-indigent"); see also United States v. Labat, 915 F.2d 603, 607 (10th Cir. 1990) (explaining "shall" in an analogous provision of U.S.S.G. § 5E1.2 implies obligation, except where the defendant establishes indigency).

Thus, we have an implicit determination that Mr. Ortner was indigent, contrary to the court's earlier determination he had the ability to pay $100,000. See 18 U.S.C. § 3572(a)(1) (directing courts to consider, among other factors, "the defendant's income, earning capacity, and financial resources" in deciding whether and how to impose a fine).

Although ordinarily "this court will not set aside findings of fact unless clearly erroneous," John Allan Co. v. Craig Allen Co. L.L.C., 540 F.3d 1133, 1139 (10th Cir. 2008), in light of these internal inconsistencies, we must remand for reconsideration of Mr. Ortner's ability or inability to pay a fine, as well as any amount, and the additional special assessment under § 3014. See id. at 1139–40 (remanding in light of internally inconsistent findings); see also United States v. Vigil, 644 F.3d 1114, 1126 (10th Cir.

13

2011) (vacating and remanding where the district court did not provide reasoning for its "implicit determination" that the defendant had the ability to pay a $10,000 fine). Because the case must be remanded on this basis, it is unnecessary for us to consider Mr. Ortner's unpreserved claim that the district court procedurally erred by addressing the government's late request for a fine (and implicit objection to the PSR) absent a showing of good cause.

Thus, the fine is VACATED and the case is REMANDED for proceedings consistent with this opinion, but in all other respects the judgment is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge